STATE vs. OLIVER CEPHUS.

*Criminal Law—Murder of the Second Degree—Malice Implied— Self-Defense—Deadly Weapon—Wooden Club or Stick— Reasonable Doubt.*

1. Different degrees of murder defined.

2. Manslaughter defined.

3. Where the circumstances surrounding the case show that the killing was committed under the influence of a wicked and depraved heart, or with a cruel and wicked indifference to human life, the law implies malice, and makes the offense murder of the second degree.

4. Implied malice, (which must be proved in order to establish murder of the second degree), is an inference or conclusion of law from the facts actually proved, and is implied by law from every deliberate cruel act committed by one person against another, however sudden the act may be, for the law considers that he who does a cruel act voluntarily does it maliciously.

5. When the killing was done with a deadly weapon, malice is presumed in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused. A deadly weapon is such a weapon as is likely to produce death when used by one person against another; such, for example, as a knife or piece of wood of sufficient size to cause death to one who may be struck with it.

6. What constitutes lawful self-defense. A statement of the law. In order, however, to justify or excuse the accused in striking the fatal blow it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm, at the hands of the deceased; but the

circumstances must have been such as to justify a reasonable man in such belief; and further, that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

(*October* 8, 1906).

LORE, C. J,, and PENNEWILL and BOYCE, J. J., sitting.

*Daniel O. Hastings*, Deputy Attorney-General, for the State.

*Robert G. Houston* for the defendant.

At a Court of Oyer and Terminer held in Sussex County on October 8, 1906, the prisoner, a young negro, was placed upon trial upon an indictment charging murder of the second degree, for the killing of William H. Passwater, a white man, in Seaford Hundred. The State offered evidence tending to prove that on the evening of Saturday, July 21, 1906, near Horsey's Cross Roads, while the deceased and others were assisting in removing a mule from the position of straddling a wagon tongue,, several colored men, among them being the prisoner, passed along the said road and used insulting language towards the deceased and his companions. That thereupon the deceased went out in the road and started towards the colored men, all of whom retreated except the prisoner, who advanced towards the deceased with a large club in his hands; that the deceased also had a small stick which he had picked up on the way; that at the suggestion of one of the witnesses that they throw down their sticks and fight fair, each dropped his stick, but when the deceased approached very near to the prisoner the latter grabbed his stick again and struck the deceased a stunning blow on the side of the head and ran; that the force of the blow knocked the deceased down; that he was helped to his feet by one of the witnesses and staggered across the road and fell again; that he was taken to his home and early on the morning of the following Monday as a result of the injuries received, he died.

The prisoner claimed that at the time he struck the fatal blow the deceased was attempting to hit him with a club; that therefore he struck the deceased in necessary self-defense.

II

PENNEWILL, J., charging the jury.

Gentlemen of the jury:—Oliver Cephus, the prisoner at the bar, is charged in this indictment with murder of the second degree,—it being alleged that he did, on the twenty-first day of July of the present year, kill one William H. Passwater, at or near Horsey's Cross Roads in Seaford Hundred in this County, by striking him on the head with a wooden club or stick, inflicting thereby a mortal wound, from which the said Passwater in a short time died.

In this case you may find any one of three verdicts, as the evidence shall warrant; *first*, not guilty; *second*, guilty of manslaughter; *third*, guilty in manner and form as he stands indicted,—that is, of murder in the second degree.

It is not necessary for us to explain to you at length what would constitute murder of the first degree, because the prisoner is not charged with that grade of murder. We will say, however, that murder of the first degree is where the killing is committed with express malice aforethought,—with a sedate, deliberate mind and formed design to kill.

Murder of the second degree—which is charged in this case —is where the killing was done with implied malice. Implied malice is an inference or conclusion of the law from the facts found by the jury. Murder in the second degree is where there was no deliberate mind or formed design to take life or to perpetrate a crime punishable with death, but where the killing was done without justification or excuse and without provocation, or without sufficient provocation to reduce the offense to manslaughter. And where the circumstances surrounding the case show that the killing was committed under the influence of a wicked and depraved heart, or with a cruel and wicked indifference to human life, the law implies malice and makes the offense murder of the second degree.

Implied malice—which must be proved in order to establish murder of the second degree—is an inference or conclusion of law from the facts actually proved before the jury, and is implied by the law from every deliberate cruel act committed by

one person against another, however sudden the act may be, for the law considers that he who does a cruel act voluntarily does it maliciously. Malice is an essential element of the crime charged in this indictment, and it may be proved just as any other material element of the charge. Without malice there can be no murder.

When the killing is shown to have been done with a deadly weapon, malice is presumed in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, for the usual and probable consequences of the act are presumed in law to have been intended by the person using the deadly weapon.

A deadly weapon is such a weapon as is likely to produce death when used by one person against another; such, for example, as a knife, or piece of wood of sufficient size to cause death to one who may be struck by it. And if death is produced by the use of a deadly weapon, great must be the provocation to reduce the killing from murder to manslaughter.

Manslaughter is where one in a sudden affray in the heat of blood or in a transport of passion, without malice, inflicts a mortal wound, without time for reflection or for the passions to cool. It is where one person unlawfully kills another without malice. In order to reduce the crime to manslaughter the provocation must be very great; so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved heart and is characterized by malice, manslaughter results not from malice but from unpremeditated and unreflecting passion.

We have been asked by counsel for the prisoner to charge you in respect to the law of self-defense; and we will say that no looks or gestures, however insulting; no words, however opprobrious or offensive, can amount to a provocation sufficient to justify even a slight assault. Nor can a slight assault excuse the killing of the assailant with a deadly weapon so as to reduce the offense from the grade of murder to that of manslaughter. The

more usual instances of manslaughter occur where two persons are engaged in mutual combat and one slays the other in the heat of passion.

The burden of establishing self-defense to the satisfaction of the jury rests with the accused.

In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defence greater force than is necessary for that purpose he becomes the aggressor.

If the deceased first attacked the accused, even though the attack was of such a character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant.

No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm. If one is attacked and from the character of such attack he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased would be a justifiable act of self-defense.

If, on the other hand, the attack was of a trifling character and manifested no purpose or intention on the part of the assailant to inflict any serious injury, the repelling of such attack by the use of a weapon likely to produce death, would not be an act of justifiable self-defense.

In ascertaining whether the accused was in any, and in what, danger of injury at the hands of the deceased when he struck the mortal blow; and, if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses.

In order to justify or excuse the accused in striking the fatal blow it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands

of the deceased, but the circumstances must have been such as to justify a reasonable man in such belief; and further, that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

In order to convict the prisoner it is incumbent upon the State to prove beyond a reasonable doubt every material ingredient of the crime charged; and if after carefully and conscientiously considering and weighing all the evidence in the case you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such a doubt, and your verdict should be not guilty. But such a doubt must not be a mere fanciful, vague or speculative doubt, but it must be a reasonable, substantial doubt remaining in your minds after a careful consideration of all of the evidence, and such a doubt as reasonable, fair-minded and conscientious men would entertain under all the facts and circumstances as proved in the case.

If you are not satisfied beyond a reasonable doubt that the prisoner killed William H. Passwater, or even though you should believe that he did kill him, yet if you are satisfied that he did it in necessary and lawful self-defense, as we have defined it to you, your verdict should be not guilty. If, however, you are satisfied that the prisoner killed the deceased unlawfully, but without malice, your verdict should be guilty of manslaughter.

But if you believe that the prisoner killed the deceased deliberately; that he did it without provocation, or without sufficient provocation to reduce the offense to manslaughter, your verdict should be guilty of murder of the second degree.

We think it proper to remind you that crime seems to be increasing in our midst; that offenses of a grave and serious character are all too common in this State and in this County; and while it is your duty to acquit the prisoner if you are not satisfied beyond a reasonable doubt of his guilt, it is equally your duty to the State and to society that you should render a verdict of guilty, if the evidence should warrant you in so doing.

Verdict, guilty.