## HATTY THOMPSON v. STATE.

No. A-7483. Opinion Filed July 24, 1930.
(290 Pac. 351.)

D. L. Clement, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, for convenience referred to as the defendant, was convicted on a charge of maintaining a public nuisance by operating what is commonly known as the Nash rooms in the town of St. Louis, Pottawatomie county, the said rooming house being a place where spirituous, vinous, and malt liquors, which contained as much as one-half of one per cent. alcohol, measured by volume, and capable of being used as a beverage, is manufactured, sold, bartered, given away, and otherwise furnished, in violation of the prohibitory laws of the state of Oklahoma; and was sentenced to pay a fine of $300 and be imprisoned in the county jail for three months. From which judgment the defendant has appealed to this court.

The testimony on behalf of the state shows that the defendant was running what was known as the Nash rooms in the town of St. Louis, Pottawatomie county; that the officers went to the rooming house of the defendant with a search warrant about the 14th day of November, 1928, and searched the premises; they served the search warrant on the defendant, found her in bed; in one room in the southwest corner they found almost a half gallon of whisky in a fruit jar; they found three or four half pints in the defendant's bedroom in a box with some papers in it, went a little further in the building, and found another half pint, and then found another half pint in another room. The witnesses also stated they had occasion to go by this rooming house and observed people congregating in and out of the place; these parties were drinking; they could tell they were drinking by the way they talked and the way they walked. Witnesses testified they found a number of empty bottles around the place; they knew the reputation of the Nash rooms, with reference to being a place where intoxicating liquor was had, kept, and possessed for the purpose of sale, and where people congregated and resorted for the purpose of buying said liquor; and that the reputation was bad.

The defendant testified in her own behalf, and admitted she was running the Nash rooms at the time the officers came to the place and searched it; the rooms were numbered from 1 to 10. The defendant stated positively that the officers did not serve a copy of the search warrant on her or say anything about having a search warrant:

"I was in No. 2; the officers did not find any whisky in my room; Mr. Guilliams told me he found a half pint in No. 4, and asked whose room it was, and I told him one of the girl's room, and she was in Maud. They had

about a pint and about a half-gallon fruit jar when they came up front. I did not know there was any liquor in the house. If the officers found it there in the rooms, the roomers had it there. It is not true I kept a place where people congregated for the purpose of drinking, bartering or selling whisky. I did not sell any liquor at the Nash rooms between the 1st of November and the 14th of November, 1928."

The defendant was then asked several questions with reference to where she had been living prior to and since she had been charged with the offense of which she was being tried. No testimony was introduced to show any previous violation by the defendant or that there had been any disturbance around the rooming house; the only testimony tending to show anything was the testimony of the state witnesses that they had passed back and forth by this rooming house and saw people congregating there, and they walked and talked like they were intoxicated. There is no testimony showing there had been any whisky manufactured, bartered, or sold at the defendant's rooming house.

The defendant has assigned three errors alleged to have been committed by the trial court: First, error in overruling the demurrer of the defendant to the evidence of the state. Second, in overruling the motion of the defendant for instructed verdict, for the reason that the liquor alleged to have been seized was not produced in evidence as provided by section 7016, C. O. S. 1921. Third, error in refusing to give an instructed verdict on motion of the defendant for the reason that the search warrant was a John Doe search warrant.

The testimony in this case is conflicting. If the jury believed the testimony of the state witnesses, then it was warranted in returning a verdict of guilty. On the other

hand, if the jury believed the testimony of the defendant, she should have been acquitted. By its verdict the jury settled the conflict in favor of the state, finding the defendant guilty. This court has repeatedly held that where there was a conflict in the testimony, if there is any competent testimony from which the jury might reasonably find a verdict of guilty, it would not disturb the finding of the jury.

The evidence is sufficient to sustain a conviction of the crime charged against the defendant. Finding no errors in the record sufficient to warrant a reversal, the judgment is affirmed.

EDWARDS, P. J., concurs. CHAPPELL, J., not participating.