## REX OWEN FLEETWOOD v. STATE.

No. A-9832.    Jan. 17, 1941.
(109 P. 2d 240.)

148

Wall & Green, of Sallisaw, and Charles Ed Frye, of Muskogee, for defendant.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore and Frank Dudley, Asst. Attys. Gen., and Ed. Armstrong, Co. Atty., of Sallisaw, for the State.

BAREFOOT, J. Defendant, Rex Owen Fleetwood, was charged with the crime of murder in Sequoyah county; was tried, convicted and sentenced by the court to serve a term of 15 years in the penitentiary, and has appealed.

It was charged in the information that the defendant committed the crime of murder by killing one Lee Scott at the town of Moffett, in Sequoyah county, on the 8th day of July, 1939, by shooting him with a pistol.

Nine assignments of error were made, some of which have been abandoned, and counsel for defendant in his brief has considered five of the assignments under one head and two under the second. Under the first assignment it is contended, "The evidence produced at the trial

of this case is not sufficient on which to base a conviction and the court should have sustained a demurrer to the evidence."

It is not necessary for this court to quote extensively from the record for a correct decision as to the law as applied to the facts. There was a direct conflict in the evidence of the state and the defendant. The evidence of the state's witnesses, if believed by the jury, was such that a verdict finding the defendant guilty of murder would have been sustained under the law. The evidence of the defendant and some of his witnesses was such that, if the jury believed his theory, he acted in self-defense and should have been acquitted. Under these facts it has been the universal holding of this court that the verdict of the jury will not be set aside on appeal where there is evidence in the record to sustain the conviction, and that the same will be reversed only when the evidence wholly fails to be sufficient to warrant a conviction of the defendant charged.

In the late case of Drennan v. State, 69 Okla. Cr. 348, 102 P. 2d 952, 954, the rule is announced as follows:

"It is only where there is a total failure of substantial evidence of the elements, or some one element, of an offense that this court on appeal is permitted to reverse a conviction on the ground that the evidence is insufficient to sustain it. The jury is the exclusive judge of the weight of the evidence and credit to be given to the witnesses. Where there is a direct conflict in the evidence, or it is such that different inference may be properly drawn from it, the jury's determination will not be interfered with upon the ground that the evidence is insufficient to sustain a conviction, where there is competent evidence tending to prove each element of the offense charged."

Briefly, the evidence in this case reveals that the deceased, Lee Scott, was working at the cafe of his brothers in the town of Moffett, Sequoyah county, which is just

across the river from Fort Smith, Ark., and on the Oklahoma side. The defendant and four companions had been in an automobile to certain resorts on the Arkansas side, and between 12 and 1 o'clock at night drove up in front of the 3.2 Cafe in Moffett where the deceased, Lee Scott, was working. The deceased answered the signal and some of the parties were served with beer. After bringing the beer out, he came back with the change and to get the tray that was attached to the car. There is not much conflict in the material evidence as to what was said or done by the parties until the deceased came to the car the last time to get the tray. All the witnesses testified that when deceased came to the car to serve the order, defendant asked him if he could get the gun which deceased had and which belonged to the defendant. That deceased told him if he would come back on the following afternoon about 2 o'clock he could get the same. That neither of the parties was angry and nothing else was said. Defendant was sitting in the back seat of the automobile which was parked in front of the cafe. When deceased returned to get the tray, he came to the right side of the car, and when told that the tray was on the other side, he went behind the car and came up to the front and picked up the tray. He was shot by defendant while holding the tray.

There is a conflict with reference to whether deceased had a gun at the time of the shooting. Three of the witnesses who were in the car did not see any gun in the possession of the deceased, and one witness testified that he saw one. Several of the witnesses testified they saw deceased raise his hand as if going toward his shirt. Others did not see this movement. There is a conflict as to what was said by the parties just before the shooting occurred. One of the state's witnesses, who worked at the 3.2 Cafe, testified that he witnessed the shooting, that deceased did

not have any gun, and that he immediately ran to a room in the cafe and secured a pistol and a shotgun, and immediately went to the scene of the difficulty, and was the first person to the body of the deceased. That he set the shotgun down on the sidewalk, and when he put his hands around the body of the deceased to raise his head, he laid the pistol down where it was found by parties after the difficulty. These witnesses testified at the trial to the finding of both the pistol and the shotgun. The deceased was in his shirt sleeves and no one saw him with the gun prior to the shooting.

As before stated, the evidence was conflicting and the jury was in a better position to pass upon the question of how the killing occurred than would an appellate court. They saw the witnesses, observed their demeanor upon the witness stand, and their verdict will not be set aside where there is evidence to sustain it and the evidence is conflicting.

It is next contended "that the court erred in making certain improper remarks in the presence of the jury." This contention is based upon an incident which happened upon the cross-examination of a witness for defendant, as follows:

"Q. Did you have any trouble with Rex Fleetwood, you and your sister in the place of business at Arkoma? A. I didn't. I don't remember whether she did or not. Q. You don't remember Rex Fleetwood taking a shot—Mr. Wall: I object, if the Court please. The Court: Here is the situation, the defendant enjoys immunity the deceased would not. The law prescribes that. I never did think it was good law. It is the law and I have to recognize it. Mr. Wall: We except to the remarks of the Court. The Court: All right. You may have an exception. That don't amend the law, whatever the court might remark. Mr. Wall: We object to that as being prejudicial to the rights

of the defendant. The Court: All right. Mr. Armstrong: That is all."

It will be noted from the above that a question was asked the witness for defendant by the county attorney and which was objected to by counsel for the defendant, and the question was not answered. Another question was asked which was immaterial, but not such as would be cause for reversal. The court then made the statement above quoted. While we do not think the statement should have been made, and there seems to be no reason for making it, yet we do not believe it was such that the jury would be influenced in rendering a verdict against the defendant by reason thereof. The argument that this question by the county attorney was such as to charge the defendant with the commission of another and different crime is not tenable. The court gave a full, complete, and very fair set of instructions to the jury. The defendant did not except to them. They fully covered the law of self-defense, and the court further instructed the jury that evidence had been offered for the purpose of showing the reputation of the deceased as a violent, quarrelsome, turbulent, and dangerous man, and that they should consider this evidence in connection with all the evidence in ascertaining whether or not the defendant at the time of the difficulty reasonably and in good faith believed that he was in danger of losing his life or receiving great bodily injury at the hands of the deceased.

The court also instructed the jury that evidence had been introduced showing the deceased was guilty of other acts of violence towards other persons prior to the alleged homicide and that defendant had heard of such acts, and that by reason thereof he feared the deceased was about to commit an act of violence upon his person; that such evidence should be considered to determine whether or not

the defendant in good faith believed he was in actual danger at the time of the difficulty. These instructions properly presented to the jury the law as applied to the evidence introduced.

The court was very fair to the defendant, and especially in permitting testimony to be given with reference to former difficulties between the deceased and other persons, and, as stated above, while we do not think any comment should be made by the court as to his belief that a law is a bad law or a good law, we do not think it was such error as caused the jury to be prejudiced against the defendant. This was certainly true in view of all the instructions given by the court in protecting the rights of the defendant. The argument of counsel for defendant that this statement is such that it should be considered as if given by the court in his written instructions is hardly tenable. It is inconceivable to believe that the jury gave such consideration to this statement as if the court had in his written instructions informed them that some law was a "bad law," but that he was giving it to them.

After a careful examination of the record we are of the opinion that the judgment of the district court of Sequoyah county should be affirmed, and it is so ordered.

DOYLE, P. J., and JONES, J., concur.