GEORGE DOTY v. STATE.

No. A-9733.  Jan. 29, 1941.

(110 P. 2d 298.)

W. W. Miller, of Tahlequah, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J.  The plaintiff in error, George Doty, was tried and convicted in the district court of Cherokee county, upon information charging him with the theft of one black heifer, white-faced, with large black spot under left eye, muley, the property of Floyd Vann.  The jury failed to agree on the punishment.  Motion for new trial was denied on March 27, 1939; thereupon the court rendered judgment and sentenced him to be imprisoned in the penitentiary for the term of two years.

From the judgment he appealed by filing in this court September 18, 1939, a petition in error with case-made.

The principal assignment of error is that the verdict of the jury is contrary to the law and the evidence.  It is urgently argued that the evidence is insufficient to support the conviction.

Floyd Vann testified:

"I live in the southwest part of Cherokee county, about a mile and a half from the defendant, George Doty.  I raised the heifer in question from a calf up; missed it on the date alleged and found it at the stockyards at Muskogee, in the possession of Bob Jackson, a stock buyer; Charley Dye went with me, I gave Mr. Jackson a description of the stolen heifer before we went to the stock pen; when I identified the heifer he turned it back to me and I took it home.  The heifer had been on the range for about a month before it was stolen."

Harve Weatherford testified:

"I live at Ft. Gibson.  About the middle of September, 1938, I hauled a motley-faced heifer and a white-face bull for George Doty to the Muskogee stockyards, and got there early in the morning.  Floyd Vann came to Muskogee, claimed the heifer and got it back."

Bob Jackson testified:

"I buy and sell livestock at the Muskogee stockyards, I handled for George Doty on commission, one black motley-faced heifer and a bull about two years old; Floyd Vann, a colored man, came and identified the heifer as his property and I gave him the heifer."

Charley Dye testified:

"I went to the stockyards with Floyd Vann to look for his heifer, he described her to Mr. Jackson before we went to the pen to identify her, he called the heifer by name and it came up to him. I know that Floyd Vann was the owner; several times I had tried to trade him out of this heifer at his house."

As a witness in his own behalf the defendant testified:

"I raised this heifer, she ran with my stock and came home after the trouble came up."

On cross-examination he stated:

"I deal in stock quite a bit and brand my calves, when they are big enough, but not all the time; I had Harve Weatherford haul this heifer and a white-faced bull that was my own to Muskogee stockyards to sell for me, I told Bill Torrick about ten days before that I did not believe the bull was mine, I did not say positively it was not my bull, but it is the same bull I sold ten days later; I bought some calves at the Muskogee stockyards and I got Russel Clemons to brand them; this white-faced heifer was not there and when we got through it was getting late and I said we would wait until a later day, I never got around to it; that is the reason why the heifer was not branded."

Without going into a detailed statement of the testimony corroborating or tending to corroborate the defendant's testimony that he was the owner of the heifer, the transcript shows that his mother and sister and four or five other witnesses testified that he raised and was the owner of the heifer.

In rebuttal the state called four witnesses whose testimony established or tended to establish the fact that the defendant was not the owner of the bull taken from the same range at the same time as the alleged stolen heifer was taken and sold at the same time.

Looking at this case upon the merits, it is impossible to find any ground for the interference of this court.

As heretofore repeatedly held by this court, it is the province of the jury to determine questions of fact depending upon conflicting evidence and to declare by their verdict what the truth is. It is no more the province of this court than of the trial court to determine controverted questions of fact arising upon conflicting evidence. Neither can lawfully usurp the appropriate functions of the jury, and neither can substitute its own judgment for that of the jury, where the facts are reasonably capable of diverse and opposing inferences.

The only other contention made is that the court erred in permitting the state to show the contemporaneous possession of a bull that was taken from the same range at the same time as the heifer in question was taken. Counsel cites no authority in support of this contention.

In the early case of Davis v. State, 7 Okla. Cr. 322, 123 P. 560, the court held that in a prosecution for larceny of certain cattle, where the evidence for the defense tended to explain the defendant's possession of the cattle, it is competent in rebuttal to show the defendant's contemporaneous possession of other stolen cattle.

In Starr v. State, 7 Okla. Cr. 574, 124 P. 1109, the court held:

"In a prosecution for larceny of two cows, evidence that other cattle were taken from the same range at the same time is properly admitted as a part of the res gestae

to negative the idea of mistake and to show the intent with which the cattle were taken."

In Smith v. State, 32 Okla. Cr. 121, 240 P. 143, the court held:

"Where the defendant's possession of property, recently stolen, is attempted to be accounted for, it is competent to show the defendant's contemporaneous possession of other stolen property."

In Glenn v. State, 52 Okla. Cr. 417, 5 P. 2d 767, the court held:

"In a prosecution for larceny where defendant's possession of property, charged to have been stolen, is attempted to be accounted for, it is competent to show his contemporaneous possession of other stolen property."

And see Cheeves v. State, 18 Okla. Cr. 480, 196 P. 726; Flannigan v. State, 55 Okla. Cr. 328, 29 P. 2d 989.

No other reason for reversing the judgment having been assigned and finding the record free from reversible error, the judgment appealed from should be, and is, accordingly affirmed.

BAREFOOT, P. J., and JONES, J., concur.