# CHARLES THOMAS WINGFIELD v. STATE.

No. A-10936.   March 30, 1949.

(205 P. 2d 320.)

46

W. J. Crump, of Muskogee, and Geo. C. Crump, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Charles Thomas Wingfield, defendant below, was charged in the district court of Muskogee county, Okla., with the murder of a soldier, Edward F. Kucza, 21 years of age. He was tried, convicted of first degree manslaughter, and sentenced to 20 years in the penitentiary at McAlester, Okla. From the judgment and sentence therein this appeal is perfected.

The first contention of the defendant is that the evidence is not sufficient to sustain the conviction. This contention calls for a brief resume of the evidence. This case has been twice tried and twice appealed. There is no substantial difference in the facts in this appeal and the prior appeal reported in Wingfield v. State, 81 Okla. Cr. 146, 160 P. 2d 945. Herein the facts appear to be that on or about September 20, 1942, the defendant was the owner of two cabin apartments about a block from the business section in Braggs, Okla., near Camp Gruber, wherein the defendant was employed as a warehouseman by the Government of the United States. A corporal, Elliott W. Sanders and his wife, occupied the cabin just south of the one in which the defendant and his wife resided. The cabins were about 12 feet apart. It further appears that on the night of September 20th the Sanders had retired rather early. On realizing that they had no bread for breakfast Mrs. Sanders suggested that her husband dress and go to a nearby store and get some. Mrs. Sanders worked in a laundry and had to be on the job between 7 and 8 o'clock in the morning. When Sanders returned he saw some one loitering near his cabin window. His wife was inside with the light burning. Sanders accosted the man and told him to go back

to town or wherever he came from. Thereupon he said the deceased staggered off. He then went inside and was told by Mrs. Sanders that some one had been peeping in the window, and prowling around the house. Sanders then went outside to see if the man had gone. He found the deceased still there, and said he had a gun in his hand. He told Kucza to put it away, that he was not afraid of him. The deceased then said "Now, by God, if you want anybody to go, you son of a bitch, you start moving—by God, you turn around," which he did and started back to the cabin. Sanders then turned around and the deceased shot at him. Sanders then turned back around and returned to his cabin, helped his wife put her coat on and they went to the Wingfields for aid. Wingfield suggested that he should report the matter to the Military Police up town. Leaving his wife at the Wingfields' he went to town for the M. P.'s. The M. P.'s came back with him and made a search and found no one, and together with Sanders they returned to town, to look for the window-peeper in a beer joint. While Sanders and the M. P.'s were gone, Mrs. Sanders suggested she heard a noise at her cabin. Wingfield loaded his double barreled .410 shotgun and went outside to investigate. He found the deceased Kucza coming around the corner of the cabin. He said that the deceased looked as though he was drunk. He admonished Kucza to leave the premises which he did not do, so he put him under arrest and told him he was going to deliver him to the M. P.'s. Wingfield said he was marching him down the street and he did not move as he thought he should and he fired the .410 into the air to frighten Kucza. He then proceeded down the street 8 or 10 feet behind the deceased, until they reached the shadow of a large elm tree, where the deceased suddenly turned on him and it looked to him he said as though he were going for a gun.

He said, his wife hollered "Look out, he is going to shoot," and the defendant shot intending "to wing" him; instead the deceased Kucza was shot just below the right nipple from which wound he died. Some of the shotgun pellets were removed from the heart and some of the wadding was taken from his liver. Defendant claimed he fired in self-defense believing that his life was in peril or that he was in danger of suffering great bodily injury.

A Mr. Harris who lived in the vicinity of the killing testified he heard defendant say "God damn you, don't make no gun play at me." In this connection the record is conclusive that the deceased was unarmed.

Three times at the suggestion of the defendant the M. P.'s searched Kucza in Wingfield's presence for firearms and found nothing. The record does disclose, however, that when Kucza was searched at the hospital he had three cartons of .45 caliber pistol shells on his person.

Mrs. Wingfield testified that when Kucza turned around and put his hand up to his shirt, Wingfield shouted, "Look out, Esther, he is going to shoot," and when her husband shot she did not recall him saying, "God damn you, don't make no gun play at me."

This constitutes the gist of the evidence. We have carefully examined the record as a whole. As hereinbefore pointed out the defendant's theory is that it appeared to him that he was in danger of losing his life or suffering serious bodily injury and that in killing Kucza he acted in self-defense. The state's contention was that even though he was defending against an assault, the plea of self-defense would not be available to him because he used unreasonable and unnecessary force to repel the same. Upon the foregoing evidence

the jury decided the issue against the defendant. This court has repeatedly held that before the Criminal Court of Appeals will interfere with the jury's verdict on the ground that the evidence was insufficient to sustain the conviction, there must be no competent evidence in the record upon which the verdict could be based. Rule v. State, 84 Okla. Cr. 347, 182 P. 2d 525; Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257. Furthermore, we have held that the function of the Criminal Court of Appeals in considering the sufficiency of the evidence is limited to ascertaining whether there is a basis in the evidence on which the jury can reasonably conclude that the defendant is guilty as charged. Ray v. State, 86 Okla. Cr. 68, 189 P. 2d 620; Peterson v. State, 86 Okla. Cr. 302, 192 P. 2d 286. Moreover, it has been held that the evidence is sufficient unless there is no testimony in the record from which the jury reasonably could conclude that the defendant was guilty. Sweat v. State, 69 Okla. Cr. 229, 101 P. 2d 648. Furthermore, if there is evidence to support the conviction, this court will not weigh the sufficiency of the same to support the verdict. Freeman v. State, 69 Okla. Cr. 164, 101 P. 2d 653. The weight and sufficiency of the evidence is a matter for the jury to determine. Doty v. State, 71 Okla. Cr. 171, 110 P. 2d 298; Fleetwood v. State, 71 Okla. Cr. 147, 109 P. 2d 240. Applying the foregoing rules to the evidence herein the jury's verdict is binding on this court. The deceased being unarmed and some 8 or 10 feet from the defendant, the jury could with reason have concluded that the defendant used more force in repelling the assault than was reasonably necessary. Apparently they believed he was too eager to pull the trigger. In any event it is the jury's province to weigh the evidence and here, it is ample from which they could draw the foregoing conclusion.

The defendant's second contention is that the court committed reversible error in giving as a part of instruction No. 2 the following language:

"For your information and so that you may understand clearly the issues herein, you are told that the law governing the facts before you has, upon review, been laid down by the Criminal Court of Appeals of this State * * * and based upon said statute and such facts said Court has held that the defendant, Wingfield, had the right to arrest the deceased and, therefore, no question is submitted for your consideration on this point.

"Further and in this connection you are told that under said opinion of said Court * * *"

This contention is predicated upon Title 22 O.S.A. 1941 § 951, reading as follows to-wit:

"A new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given. The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew except of witnesses who are absent from the state or dead, in which event the evidence of such witnesses on the former trial may be presented; and the former verdict cannot be used or referred to either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment or information."

In Stough v. State, 75 Okla. Cr. 62, 128 P. 2d 1028, 1040, this court said:

"It has often been decided by this court that when a new trial is granted this places the defendant in the exact status as if no trial had been had. Watson et al. v. State, 26 Okla. Cr. 377, 224 P. 368; Snelling v. State, 41 Okla. Cr. 124, 271 P. 687; Duncan v. State, 41 Okla. Cr. 89, 270 P. 335; Bayne v. State, 48 Okla. Cr. 195, 290 P. 354."

The foregoing statute and cases must be construed and applied in the light of reason. In the trial of this

case there were many references to the former trial and much reading from the testimony given by witnesses therein who were absent at the trial now under consideration. Under these conditions, a reasonably intelligent jury might rightly conclude that there may have been a former conviction, which had been set aside on either a motion for new trial or by reason of reversal on appeal. To not so reason would be to indulge the presumption that the jury was composed of men wholly unversed in such matters. In this enlightened age we believe such an assumption would be based on a false premise. However, we do not in any sense approve the court's allusion to the reviewing of the opinion of the Criminal Court of Appeals in relation to the defendant's right to make the arrest of the deceased. It was entirely unnecessary, and was error for the court so to do, but error of a technical and not a substantial nature. It did not tell the jury anything, which, under the conditions, they did not already know. We are therefore of the opinion that it was not such an error that merits a reversal of this case, but falls within the harmless error doctrine under Title 22 O.S.A. 1941 § 1068. In this connection, however, we must point out that each case of this nature must stand or fall upon the circumstances therein involved. We can visualize circumstances and conditions where such a situation would be highly prejudicial to the defendant and might warrant reversal, but such is not the situation in the case at bar.

Further under this proposition the defendant contends the court committed reversible error in not giving instruction No. 2 as requested by the defendant. With this contention we cannot agree. It would have been erroneous to have given said instruction, for the reason that it contains the following language in reference to

the defendant to the effect "it was his duty to arrest Kucza at the time he arrested him." We know of no statute placing upon the defendant, as a private citizen, such a duty, under the conditions herein involved, and to have so instructed the jury would have been erroneous. Nor would it have been proper to have instructed the jury that "the Military Police were the proper persons to whom the defendant should have been delivered." The defendant being a civilian and not having committed an offense on a military reservation, it is obvious that the civil and not the military authorities were the proper persons to whom to deliver the defendant. To have given this instruction certainly would have been error, and the defendant's contention in this connection is wholly without merit.

Moreover, under this proposition the defendant contends that instruction No. 2 was erroneous in that the court concluded with the clause "and whether or not the defendant used unreasonable and unnecessary force to repel the assault." We believe the question stated is in keeping with sound law, in fact, the test is whether the defendant used unnecessary and unreasonable force in making the assault in his attempt to deliver the deceased to the proper authorities and in resisting the alleged assault. In State v. Cephus, 6 Pennewill, Del. 160, 67 A. 150, it was said:

"In resisting an assault no more force may be used than is necessary, and if the person assaulted uses in his defense greater force he becomes the aggressor."

To the same effect is State v. De Paolo, 26 Del. 176, 84 A. 213. We believe this to be a correct statement of the law. Under the facts herein the jury apparently believed more force than reasonably necessary was used to repel the assault, resulting in the death of Kucza, and

therefore the jury found the defendant guilty of manslaughter. There is a distinction in this instruction and the one given in Franks v. State, 8 Okla. Cr. 71, 126 P. 582, 584, cited by the defendant. Therein the trial court said "the defendant, Franks, had a right to use just such force as was necessary in order to save himself from receiving great bodily injury and no more." That instruction required the jury to determine whether defendant had measured the force with much exactness which men do not do under heat of passion. To so instruct the jury was clearly erroneous. But here, the jury was instructed that they were to determine from the facts whether the defendant used unreasonable or unnecessary force to repel the assault. Therein lies the distinction in the case at bar and the Franks case, supra. Such distinctions are well recognized in the law. If they were not there would be no such thing as varying degrees of guilt. We find such distinctions running all the way through the law such as simple assault and aggravated assault. The effect of the instruction in the Franks case was to place upon the defendant the duty of measuring under the heat of passion the force to be applied. The effect of the instruction in the case at bar placed upon the jury the responsibility of measuring under the circumstances the force applied by the defendant and to determine whether or not he used more force than was reasonably necessary to repel the assault. For the foregoing reasons we do not believe instruction No. 2 is erroneous and this contention is without merit.

Defendant's third contention is that the trial court erred in giving instruction No. 3. The first point in relation thereto is that it placed upon the defendant the burden of retreat and required him to run. This is wholly without merit for the reason that in briefing this con-

tention defendant apparently through oversight omitted to observe the word "not" in said instruction. When inserted as it appears in the case-made it would have made the last clause in the instruction read "except that he is *not* bound to retreat to avoid the necessity of so doing." The lack of merit of this contention is obvious.

The balance of defendant's third contention relates to the last paragraph of instruction No. 3, reading as follows:

"The foregoing are in short the governing laws of self-defense but the plea of self-defense is not available to a person who uses unreasonable or unnecessary force to repel the assault."

He contends that this part of instruction No. 3 does not submit to the jury the proposition of whether the defendant reasonably believed that he was in danger of losing his life or having great bodily injury done to him. Standing alone, this part of the instruction would be inadequate, but such is not the case. Subsections (c) and (d) of instruction No. 3 do submit the question of whether defendant reasonably believed he was in danger of losing his life or having great bodily injury done him. They read as follows:

"(c) The danger, or apparent danger, must be viewed from the defendant's standpoint, and no other—with the further reservation, however, that he cannot use greater force in repelling the threatened attack than reasonably appears to him sufficient to do so, and that he must exercise his judgment with respect thereto as a reasonable man.

"(d) The defendant has the right to use whatever force reasonably appears to him under the circumstances to be necessary to repel the attack or threatened attack and avoid injury to himself, even to the extent of taking human life—and if, when viewed from his standpoint at

the time, it reasonably appears that the killing was necessary to prevent death or great personal injury to himself, then the killing will be justifiable."

The objection to the first quoted portion of instruction No. 3 is not unlike the complaint raised hereinbefore as to instruction No. 2, and what we have said in relation thereto hereinbefore applies to this contention. See Rich v. State, 31 Okla. Cr. 391, 395, 239 P. 183, 184, cited and relied on by the defendant, wherein the court had instructed the jury "a person who is unlawfully attacked has a right to use force, and no more, as reasonably appears to him to be necessary under the circumstances." This court said:

"The defendant claims that this declaration is condemned in the case of Franks v. State, 8 Okla. Cr. 71, 126 P. 582. An examination of that case will disclose that the instruction there given and the facts to which it was meant to apply are different from those in the instant case.

"The clause, 'as reasonably appears to him to be necessary under the circumstances' (for his protection), states the true rule, and this instruction is not subject to condemnation as pointed out in the Franks case, or the case of Brown v. State, 15 Okla. Cr. 64, 175 P. 66."

The situation there confronting the court was similar to the one confronting us in the case at bar. As indicated in the Rich case the instruction must be read as a whole. If the court had given only the portion of instruction No. 3, as complained of by the defendant, in the concluding clause of said instruction, we are inclined to believe that there might be merit in defendant's contention, but when read in the light of subsection (4), hereinbefore referred to, and when considered in the light of Rich v. State, we can reach no other conclusion than that this contention is without substantial foundation. We do not see

how instruction No. 3 could have been any more favorable to the defendant without being unfair to the state.

The fourth contention of the defendant is wholly without merit. It is an attempt to make a play on words given by the court in instruction No. 6 to the effect "about to make an attack upon him" and the language contended for by the defendant "about to be assaulted by the deceased with a *pistol*." It is worthwhile to note in this connection that the language complained of in this instruction compares favorably with the language used by the defendant in his requested instruction No. 1 reading in part as follows:

"While in such custody committed an overt act and made demonstration or demonstrations in such a way as to cause the defendant to reasonably believe that he was about to be assaulted by the deceased."

There is little difference in the substance of the two expressions. Certainly the language complained of, in our opinion, does not deprive the defendant of any substantial right by failing to use the word pistol in the said instruction; equally is this true, in view of the language of instruction No. 9 hereinafter set forth, wherein the court used the expression "about to make an assault upon him with some weapon."

The fifth contention of the defendant relates to the trial court's instruction No. 9 and the court's failure to give defendant's requested instruction No. 1. We have carefully examined both instruction No. 9 given by the court and instruction No. 1 as requested by the defendant. Instruction No. 9 given by the court is substantially the same as instruction No. 6 given at the former trial of the defendant. Judge Barefoot in the former opinion by this court, found no error in instruction No. 6

therein given, and we find none in instruction No. 9. In our opinion, it constitutes a fair statement of the law of self-defense, fair both to the state and to the defendant. We will not set out defendant's requested instruction No. 1. It is sufficient to observe that said instruction as requested by the defendant is more favorable to him than to the state. It places undue emphasis upon facts favorable to the defendant to the prejudice of the state. To give such an instruction is contrary to the law. In Turpen v. State, 89 Okla. Cr. 6, 204 P. 2d 298, we said:

"It is improper for the court to comment upon or stress particular evidence of either the State or defendant in the instructions given to the jury. The instructions should fairly state the law applicable to all of the issues raised by the evidence, but should leave the questions of fact for the determination of the jury.

"Court did not err in refusing requested instruction of defendant which would have emphasized certain evidence of the defendant and would have amounted to a comment upon the weight of the evidence."

In the light of the foregoing we are of the opinion that this contention is without merit.

The defendant's sixth contention is that the court erred in not giving his requested instruction No. 4, reading as follows:

"You are further instructed that there are two kinds of danger known in law:

"First, there is real danger of death or great bodily harm. Second, from the appearances presented to the defendant, he thought at the time of the shooting he was in danger of death or great bodily harm, though in truth and in fact, there was no such danger, and in this connection, you are instructed that the defendant has the same right to act upon the appearance of danger as if the danger was real."

To have given this instruction would have been entirely improper, particularly the language "he thought at the time of the shooting he was in danger of death or great bodily harm" amounts to an instruction on the facts which could only be calculated to influence the jury in favor of the defendant to the prejudice of the state. It certainly would have been construed as a comment by the court, indicating its opinion, as to the evidence in the case. This contention is without merit. That part of the requested instruction that is proper is fully covered in the instructions that were given.

The defendant's seventh contention is that the court erred in not giving defendant's instruction No. 7 reading as follows:

"You are further instructed that if there is a fact or circumstance growing out of the killing of the deceased that is capable of more than one construction, you are instructed to place upon that fact or circumstance the construction most favorable to the defendant."

This requested instruction is but another way of instructing on the doctrine of reasonable doubt, which had been adequately covered in the court's instructions. Hence there was no reason to give requested instruction No. 7 and it was not error not to give it.

The defendant's eighth contention relates to the court's refusal to give defendant's requested instruction No. 13, in relation to the defendant's right of self-defense. The trial court had adequately instructed the jury on the right of self-defense in instruction No. 3. In our opinion it was not error under the conditions to refuse to give defendant's requested instruction No. 13 in the face of instruction No. 3 as given, adequately instructing the jury on the right of self-defense, the pertinent portion of which is quoted in the discussion of proposition No. 3.

We have carefully examined the instructions given by the court in the case at bar as well as the entire record. This record is particularly free of substantial errors. This court has repeatedly held in conformity with the provisions of Title 22 O.S.A. 1941 § 1068, that a judgment of conviction will not be reversed on the ground of misdirection of the jury, unless, after an examination of the entire record it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of the constitutional or statutory rights of the defendant. Curtis v. State, 69 Okla. Cr. 278, 101 P. 2d 1062; Bradley v. State, 85 Okla. Cr. 288, 187 P. 2d 677. The foregoing instructions complained of in our opinion do not amount to a miscarriage of justice nor constitute a violation of any of the defendant's constitutional or statutory rights.

The defendant's ninth contention relates to the disqualification of the county attorney, who was of counsel for the defendant in the first trial, and to the appointment of a special county attorney and a special prosecutor both of whom did not take an oath of office before performing the duties of special county attorney and special prosecutor. The pertinent part of the court's order reads as follows:

"It is further ordered that Douglas Garrett and June Bliss be and are hereby appointed as special county attorney and prosecutor in such Court and after they have taken the oath, they are to assume all responsibilities and duties in the prosecution of said action that the county attorney may rightfully assume."

The foregoing order appointing a special county attorney is authorized under the provisions of Title 19 O. S. A. 1941 § 187, as follows:

"The district court, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, or disqualified to act may, appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose."

It is apparent that the court was without authority to appoint June Bliss as special prosecutor under the foregoing provisions of the statute. The law only provides for the appointment of one. If he could appoint more than one he could appoint many. Such is not the law. However, in the absence of an affirmative showing of substantial prejudice,‐the error can only be regarded as technical. In the instant case there is no such showing. It appears only to put the county to an unnecessary and unauthorized expense. It was not such an error as would avail the defendant.

In this connection it is further contended that June Bliss could not qualify as special prosecutor since he was not a resident of the county. Such contention might apply to the special county attorney, Douglas Garrett, who should possess the same legal qualifications of a duly elected county attorney, among which is that he must be a resident of the county from which he is elected. For the qualifications of county attorney and special county attorney see Title 19 O.S.A. 1941 §§ 131, 181, 187. But a special prosecutor does not necessarily have to reside in the county where the case is being tried. To hold otherwise would eliminate in many cases able special prosecutors privately employed. Such qualifications of special appointees therefore as to residence applies only

to a special county attorney serving as a substitute for the duly elected county attorney. If the appointment of the special county attorney is regular, the fact he may have been assisted by others would be immaterial. In this connection, it is not contended that Douglas Garrett was not a resident of the county. He was therefore eligible to serve as special county attorney if otherwise qualified. It is not contended that he was not qualified except in one regard, which brings us to the final contention of the defendant.

Finally, defendant contends that neither Douglas Garrett or June Bliss were qualified to act as special county attorney or special prosecutors since they did not take and file a special oath of office as such special officers. This court has held in Dodd v. State, 5 Okla. Cr. 513, 115 P. 632, 633, that:

"* * * (b) A special county attorney, when properly appointed by a trial court, before attempting to exercise the functions incumbent upon him by the appointment, should qualify as the law requires.

"(c) A special county attorney, although lawfully appointed by proper order of the trial court, cannot lawfully perform any of the duties incumbent upon him until he first qualifies as provided by law."

In addition to the Dodd case, the cases of Bethel v. State, 8 Okla. Cr. 61, 126 P. 698, and Lizar v. State, 82 Okla. Cr. 56, 166 P. 2d 119, both indicate by implication the necessity for the special county attorney taking and filing a special oath before assuming such special duties. We know of no statute requiring the same. Quite frankly in view of the oath every member of the bar must take, Title 5 O.S.A. 1941, § 2, we are of the opinion that little could be gained by requiring another oath to perform special duties. In fact, we are impressed with the

logic in State v. Buhler, 132 La. 1065, 62 So. 145, 149, as follows:

"It is true that counsel appointed by a court under the act cited above had important functions to discharge. None the less he is not a regularly elected or appointed officer; and, although his duties are highly important to the state, the law certainly does not require an oath to be taken. He is at all times an officer of the court, who may be called upon by the court to perform a special service. Was he an officer in the sense of the Constitution? If he was, an oath should have been administered; but he is not an officer in that sense, and therefore it does not follow that an oath should be administered, although, as abundance does not vitiate, it may be preferable to administer an oath. Under the Act of 1817, p. 42, regarding the appointment by the court, the court had authority to appoint an attorney to prosecute. In State v. Viaux, 8 La. Ann. [514] 517, an appointment was made under the authority of the cited act, which is similar to the act, before cited, of 1886 as relates to the particular point in discussion. The question arose in the cited case whether the appointee was an officer in the sense of the Constitution. This court held that he was not; that he was acting for an officer but not as an officer. If that decision be correct (and there is no intimation anywhere that it was ever held otherwise), there was no necessity of administering an oath. We will state, in order to cite another authority, it is, as before suggested, advisable that the oath be taken, but, if no objection be made at the time, it does not give rise to grounds sufficient to set aside a verdict. State v. Cato, 116 La. [195] 198, 40 So. 633; Eng. & Am. Ency. of Law, vol. 23, p. 299, No. 5."

While it may be advisable to require such an oath, and certainly could not be objectionable, it is not necessary for us to pass upon the question for the reason that no objection was interposed at the proper time to such failure so to do. From all of the cases we have found

on the subject such ground is unavailing unless timely objection was interposed. Here, the protest and objection was not urged at the proper time, or urged at all. The defendant filed what he labeled a protest and objection, the pertinent part of which is as follows:

" * * * That the said Douglas Garrett and June Bliss are not, nor is either of them, the duly elected or appointed and qualified county attorney of Muskogee county, Okla., and have never been elected, appointed or qualified as such in the manner and form required by law, nor have they, or either of them, ever been elected, appointed and qualified as special county attorney or prosecutor as required by law. That June Bliss is not a resident of Muskogee county."

The record discloses that counsel for the defendant in presenting the said protest did not urge the contention they now make as to failure of the special county attorney and prosecutor to take an oath before assuming such duties. On the contrary, it clearly shows, quoting from Judge Summers, the discussion on the protest "was limited to the fact that there was an assistant county attorney who was not legally disqualified to try the case and the attention of the court specially directed to that ground of the objection" and "the suggestion that the special counsel were not legally qualified was not otherwise given any direct consideration, either by counsel or by the court," other than the allegations contained in the protest, supra. In other words, it appears that counsel for the defendant were "laying behind a log" which practice we do not approve. It takes unfair advantage of the trial court and the state. It is an attempt to create a point by technical silence which if urged would be obviated and the technicality destroyed. Such conduct is similar to complaining about the court's failure to instruct on a certain feature of a case, without at

the time of trial suggesting the necessity of such an instruction. This court has often said it will not permit that kind of contention to prevail. Likewise we are of the opinion that since this contention relative to the failure of the special county attorney and prosecutor to take an oath was never argued to the court, merely filing a protest which did not clearly disclose such grounds but from which such argument might have been made, but was not made, does not amount to a valid presentment and objection. To hold otherwise would compel us to look at form and not at substance. We are therefore of the opinion that this ground was waived by failure to present the same to the trial court so that he could intelligently pass upon the objection hidden in the protest, but never disclosed to the trial court until the filing of the motion for new trial. We do not feel constrained to make of criminal procedure a game, where the trial court must match wits with the lawyers in an effort to ascertain hidden purposes, which they may not choose to disclose, in order to gain future advantage. Under the conditions herein presented we must conclude this proposition is likewise without merit.

We are aware, however, of the fact that this case was tried during a time of excitement created by war, and the deceased Kucza was a soldier. We are inclined to believe that the severity of the penalty imposed may have been prompted by the heat of wartime temper and prejudice. Moreover, we are impressed with the fact that the defendant had never before had a brush with the law, but had been a good, peaceable law-abiding citizen as disclosed by the record. Furthermore, the record discloses that the killing was without malice. The defendant had never seen or known the deceased and therefore was unlikely to have had any malice toward him. It

further appears that by now the defendant is at least 66 years of age and to let the 20 year sentence stand would be equivalent to imposing a life sentence, which certainly the facts do not warrant. For these reasons and under the provisions of Title 22 O.S.A. 1941 § 1066, and in keeping with the ends of justice, we are of the opinion the sentence herein imposed should be and the same is hereby modified to ten years; otherwise the same is in all things affirmed.

JONES, P. J., and BAREFOOT, J., concur.