Kurt TERHUNE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–74–453.

Court of Criminal Appeals of Oklahoma.

Dec. 26, 1974.

Rehearing Denied Jan. 10, 1975.

ber 15, 1973, the complaining witness, Albert Jackson, and his two sons were moving a house down a county road southeast of Bartlesville, Oklahoma, when the house became lodged on a small bridge thereby blocking traffic. On the same morning, while on his way to work, the defendant came upon the blocked bridge whereupon the complained of incident occurred.

Albert Jackson testified that another car driven by a Mrs. Murphy preceded the defendant and he was in the process of explaining the situation to Mrs. Murphy when the defendant drove up and began to curse. Jackson then told the defendant, "Now, there's been a time that I wouldn't take this. I would ask you out of that car." The defendant then went to the trunk of his car, got a pistol and pointed it at Jackson. The witness's two sons, one with a two by four in his hand, approached the defendant and Jackson told them to go back. The defendant finally got back in his car, put the gun down, chatted for a few moments, shook hands and left.

The testimony of Albert Russell Jackson III was essentially the same as his father's. He testified that the defendant drove up while his father was talking to Mrs. Murphy and began to curse and threatened to burn the house off of the road. The defendant went around to the back of his car and got a gun out of the trunk. He proceeded to wave the gun and said, "I'll shoot you-uns all. I ain't a damn bit a-scared of any of you." The witness picked up a two by four and began to come forward when his father told him to stop, stating, "he's liable to shoot you." David Jackson then took the stand and his testimony was essentially the same as his brother's. Both Jackson brothers testified that the defendant pointed the gun at their father.

Mrs. Edith Murphy then testified that on the morning in question, she drove up to the house blocking the bridge and Mr. Jackson came back and stated that it would be about 40 minutes before the

Bruce W. Robinett, Brewer, Worten & Robinett, Bartlesville, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

The appellant, Kurt Terhune, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Washington County of the crime of Pointing a Deadly Weapon. Punishment was assessed by the jury at a fine of Fifty Dollars ($50.00) and imprisonment in the County Jail for a period of three (3) months. From a judgment and sentence in conformance with said verdict, the defendant has perfected his timely appeal.

The evidence adduced at trial establishes that during the morning hours of Novem-

bridge was clear. Another car then drove up behind her and the driver yelled, "Get that god-damn house off of there or I'll burn it." Jackson then turned to her and asked her if she knew who the man was. She stated, "No." and Jackson then started to walk to his truck. Mrs. Murphy then gave the following testimony:

"Q: Did you see anything happen after that?

A: Well, the man started to get out of his car and he said he was going to burn the house. And the oldest one of the boys picked up a stick out of the back of the pickup. And this man went to the trunk of his car and got a gun and opened his car door and stood—And he said, 'And I got the difference between everyone of you son-of-a-bitches.'"

When asked if the defendant was just holding the gun for the Jacksons to see, or waving it at them, Mrs. Murphy stated, "I'd say he just wanted them to know he had it." She further stated that he was pointing the gun at all three of the men.

On cross-examination Mrs. Murphy stated that the defendant had gotten out of his car and started moving towards the house blocking the road when one of the Jackson boys picked up a two by four from a pickup truck and just stood there. The defendant then moved to the back of his automobile, opened the trunk and got his gun. The State then rested.

The defendant then called W. J. Jarvis, Chief of the Bartlesville Police Department, who testified that he was acquainted with Albert Jackson's reputation in the community for truth and veracity and that Jackson had the reputation of being untruthful. Jarvis further testified that Jackson was hot-tempered and customarily used profanity.

The defendant next called Carl Holly, a Washington County Deputy Sheriff, who testified as to self serving statements of defendant that on the morning in question he received a call from a man who identified himself as the defendant. Holly then stated as follows:

"He told me that he had started to work and Mr. Jackson was moving a house and was hung up on a bridge. And he said he drove up and asked Mr. Jackson how long it would be before he could get through there. And said Mr. Jackson told him he didn't know, it would probably be maybe an hour or an hour and a half. And he said one word brought on another, and then Mr. Jackson and his boy come at him. They were going to give him a whipping. And he run back to his car and opened the back and got a gun out. And he said, 'I pointed the gun at him.' He said, 'I wasn't about to let those two men jump on me.' And I said, 'Well, I don't know anything about that, but I'll come out and see what's going on.' So I went out."

By the time Holly got to the location, no one was there and he made no report to the District Attorney.

The defendant then called Lloyd Shell, a Deputy Sheriff, who also testified that Jackson had a reputation for being untruthful.

Defendant then took the stand and testified that on the morning in question he was on his way to work and running a few minutes late; that upon arrival at the point where the house was blocking the road, Albert Jackson was laughing and talking with Mrs. Murphy; and he stopped his car, turned off the engine, and waited for approximately one minute for Jackson to come over to his car; that after being told by Jackson that the road would be blocked for 30 to 40 minutes, he asked him, "Who gave him the right to block the whole damn road"; that Jackson then said, "By god, if you don't like it, get out of that car. I'll show you." The defendant got out of his car and stated, "I'm ready for people like you." Jackson then stated, "Yeah, a son-of-a-bitch like you would carry a knife or a gun." The defendant then reached in the trunk and pulled out

a gun. Jackson then backed away. One of Jackson's boys had a board in his hand and the defendant said, "Come on, boys. I've got enough here for all of you." Things then settled down and the defendant put up the gun, talked to Jackson for a while, shook hands and left. The defendant then reported the incident to the Sheriff's office. On redirect examination the defendant stated that he felt it necessary to get the pistol since he had just undergone expensive dental work, needed his hands to type and wore glasses and was practically blind without them. He further stated that he didn't leave because the starter on his car was bad and didn't always work. He stated that he was "sorry about the whole thing", but felt he was innocent under the circumstances.

The State then called Samuel Chestnut as a rebuttal witness. Chestnut stated that Jackson was truthful, had an even temperament and didn't use vulgar language. On redirect examination Chestnut testified that Jackson had joined the church and that it had resulted in a complete change in him.

■ Defendant's first proposition urges that the trial court erred in prohibiting defense counsel from attacking the credibility of the complaining witness, Albert Jackson, with proof that Jackson had entered a plea of guilty to a second degree forgery charge in 1938. Prior to trial the State filed and the trial court sustained a *Motion In Limine* to enjoin defense counsel from cross-examining Jackson with reference to the remote conviction. Defense counsel now argues that the action of the trial court prejudiced the defendant's right to impeach the complaining witness and, therefore, amounted to an abuse of discretion.

The defendant was allowed to attack the credibility of the complaining witness through the testimony of Jarvis and Shell who both testified as to his reputation for being untruthful. We therefore hold that the ruling of the trial court did not, in the instant case result in any prejudice to the defendant.

The defendant next urges that the trial court erred in refusing properly to instruct the jury concerning the defendant's right of self-defense. The instruction complained of conditioned the defendant's right to defend himself upon a belief that he was "in danger of losing his life or of suffering great bodily harm." The defendant's refused, requested instruction conditioned his right to self-defense upon a reasonable belief that he was in danger of "suffering bodily harm." The question therefore posed is, whether the trial court erred by inserting the word "great" when instructing the jury as to the amount of danger the defendant need reasonably perceive.

■■ This Court has held on numerous occasions that in repelling an assault, a person may use such force as reasonably appears to him to be necessary under the circumstances to avoid serious or permanent bodily injury or loss of life. Wingfield v. State, 89 Okl.Cr. 45, 205 P.2d 320. A simple assault cannot be repelled with a deadly weapon unless the assault is such as to excite the assaulted person's fears as a reasonable man of danger to life or great bodily harm. Gransden v. State, 12 Okl.Cr. 417, 158 P. 157. In the instant case the defendant chose to use a deadly weapon to repel what he believed to be an assault. Under the circumstances the only proper instruction was that given by the court.

■ The defendant further objects to the court's "aggressor" instruction, arguing that after instructing the jury on the loss of the right to self-defense by reason of aggression the trial court failed to further instruct that an aggressor can regain the right if he has withdrawn from an affray that he originally instigated. Based upon the facts in the instant case it is our opinion that the trial court did not err. The evidence does not reflect that the defendant in the instant case ever attempted to leave or otherwise withdraw from the controversy. The defendant did not submit a requested instruction on the subject and the trial court's failure to so instruct does

not constitute fundamental error. The instructions when considered as a whole fairly and correctly state the law applicable to the issues presented by the evidence. They are therefore sufficient. Stone v. State, Okl.Cr., 442 P.2d 519.

The defendant's third proposition contends that the trial court erred in refusing to grant a mistrial by reason of the misconduct of the prosecutor in eliciting improper testimony from the State's witnesses and in arguing the case to the jury.

On cross-examination of Mrs. Murphy the prosecutor elicited testimony to the effect that after she had left the scene of the confrontation the defendant attempted to run his vehicle into hers. We do not find such testimony to be objectionable in the instant case. The defendant's departure was a part of the res gestae and tends to establish his continuing anger.

Defendant next complains of the prosecutor's questioning of the defendant concerning why he did not leave the scene when the trouble started. Defendant urges that it is elementary law that no man is required to retreat when an assault is made or threatened against his person, and that the comment made by the prosecutor leaves an impression with the jury that the defendant should have retreated. However, the record reflects that the court properly instructed the jury on the defendant's right to stand his ground and we find nothing to indicate that the question complained of, in any way, prejudiced the defendant in the instant case.

The defendant next complains of the testimony of the State's witness, Samuel Chestnut, to the effect that Albert Jackson had started going to church prior to the incident and that it had changed his life

and reputation. We do not find this testimony to be improper. The defendant had attempted to impeach Jackson by showing his reputation for untruthfulness. It was proper rebuttal for the State to show that his reputation had undergone a change.

The defendant next complains of the statement of the prosecutor during her closing arguments as follows:

"One thing Mr. Robinett has not told you. Sentences can be suspended. Jail time can be suspended. If you find him guilty beyond a reasonable doubt of the crime we've charged him with—"

The remark was obvious error. However, as the jury assessed the minimum sentence prescribed by law, it is our opinion that the statement in this case did not constitute reversible error.

The defendant's last proposition urges that the trial court erred in overruling the defendant's motion for directed verdict and demurrer to the evidence. We do not agree. This Court has held on numerous occasions that where there is any competent evidence tending to sustain the allegations of the information, the Court should not sustain a demurrer to the evidence. Dorrough v. State, Okl.Cr., 452 P.2d 816. It is the province of the jury to weigh the evidence and determine any conflicts therein. The defendant's last proposition is without merit.

Therefore, after reviewing the record we find that the evidence supports the verdict of the jury and that the record is free of any error which would justify reversal or modification. The judgment and sentence appealed from is, accordingly, affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.