[Crim. No. 36888. Second Dist., Div. Two. Apr. 1, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO ROJAS, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Sevilla, Chief Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COMPTON, J.—A jury found defendant guilty of attempted robbery and two counts of assault with a deadly weapon. Defendant, having entered a plea of not guilty by reason of insanity, was also found to be sane at the time of the commission of the offenses. We affirm.

Defendant does not attack the sufficiency of the evidence. Briefly stated, that evidence established that defendant approached an individual on the street and demanded money. When the victim refused to comply with the request, defendant struck him with a length of pipe and ran from the scene.

The victim enlisted the aid of a friend and tracked defendant to a liquor store. When the two attempted to corral the defendant he struck the victim's companion with the same pipe. Neither of the victims was seriously injured.

Prior to trial, the trial court declared a doubt as to defendant's sanity within the purview of Penal Code sections 1367 and 1368. Two psychiatrists were appointed to examine defendant. Their reports disagreed as to defendant's competency to stand trial. The trial court, sitting without a jury, found the defendant competent to stand trial.

 Defendant contends that the trial court erred in not advising him of his right to a jury trial on that issue and in failing to obtain a personal waiver. His position is that a jury trial on the issue of competency to stand trial is constitutionally required unless personally waived.

The proceedings established by Penal Code section 1368 and its accompanying statute section 1369 are statutory creations and as we will discuss, *infra*, have only an indirect and limited constitutional basis. In short, these are special proceedings, civil in nature, and have as their primary purpose the avoidance of penal treatment for persons adjudged to be incompetent to stand trial. It has been held that, absent a specific request for a jury, a court may decide the issue. (*People v. Hill* (1967) 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 586].)

Defendant relies on *People v. Superior Court* (*Campbell*) (1975) 51 Cal.App.3d 459 [124 Cal.Rptr. 158], an opinion rendered by Division Four of this court. The court there in declaring that a defendant has a constitutional right to a jury trial in proceedings under Penal Code section 1369, relied on *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509], which held that there was a *constitutional right* to a jury trial under the mentally disordered sex offenders statute. (Welf. & Inst. Code, § 6300 et seq.)

In *Feagley*, the court cited its earlier decision in *People v. Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352], wherein it was held at page 351: "[A] mentally disordered sex offender committed for an *indeterminate period* to a state mental hospital suffers such a massive curtailment of liberty and such lingering moral stigma that he is entitled to the same standard of proof beyond a reasonable doubt accorded to a criminal defendant." (Italics added.) By its citation to *Feagley*, Division Four apparently analogized the imprisonment and long-term incarceration possible under the mentally disordered sex offender statute to the possibility of prolonged incarceration following a finding of incompetency pursuant to Penal Code sections 1368 and 1369.

We must respectfully observe, however, that the analogy appears unfounded since Penal Code sections 1368-1369 proceedings and commitment proceedings under the mentally disordered sex offender statutes (Welf. & Inst. Code, § 6300 et seq.) arise from vastly differing legislative motivations, and Penal Code sections 1368-1369 proceedings cannot of themselves result in long-term incarceration or imprisonment.

■ The mentally disordered sex offender statute (Welf. & Inst. Code, § 6300 et seq.) looks to the proper disposition of an individual who has committed a sexual offense and who poses a danger to the health and safety of others. Its main purpose is to protect society. (See

*People* v. *Feagley, supra,* 14 Cal.3d 338.) The statute thus deals with an offender who must be separated from society because of the type of offense for which he was convicted. A jury trial is required because the result is confinement under conditions similar to penal incarceration. (See Welf. & Inst. Code, § 6316.2; *People* v. *Feagley, supra,* at p. 352.)

Unlike the mentally disordered sex offender, the defendant in a hearing to determine competency to stand trial is not an offender. Any resulting confinement is for diagnostic purposes essentially relating to his competency to stand trial.

 Any long-term incarceration of a defendant who is found to be incompetent to stand trial requires the institution of additional proceedings predicated on a determination that there is no likelihood of his regaining his competency and that he remains dangerous to others. (*In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018]; *Conservatorship of Hofferber* (1980) 28 Cal.3d 161 [167 Cal.Rptr. 854, 616 P.2d 836]; Pen. Code, § 1370; Welf. & Inst. Code, § 5008.)

In *People* v. *Burnick, supra,* 14 Cal.3d 306, and to a lesser extent in *People* v. *Feagley, supra,* 14 Cal.3d 338, the Supreme Court was concerned with the likelihood of the attachment of moral stigma to one confined under the mentally disordered sex offender statute. We can conceive of no such moral stigma inhering in a process designed to ensure that a mentally incompetent defendant not be subjected to a trial at which he would be unable to cooperate in his defense and unable to understand the import of the proceedings.

Proceedings under Penal Code sections 1368 and 1369 simply constitute a mechanism, designed for the defendant's benefit, by which he may avoid the stigma and possible incarceration which results from criminal conviction. Any confinement which might ensue rests on an additional and independent determination that he is a danger to others and not per se on the finding of incompetence. (See *Conservatorship of Hofferber, supra,* 28 Cal.3d 161; Welf. & Inst. Code, § 5008.)

A holding that a defendant is, as a matter of right, entitled to a jury trial on the issue of competency to stand trial, unless affirmatively and personally waived by him, would raise the question of whether any waiver could ever be effective.

In such proceedings the issue is, in part, whether defendant is able to *understand the nature of the proceedings taken against him.* (Pen. Code, § 1367.) Accordingly, it has been held that it is "contradictory, inconsistent and incongruous to permit him to discharge his attorney and represent himself at a hearing where the issue of his sanity is to be determined." (*People* v. *Tracy* (1970) 12 Cal.App.3d 94, 102 [90 Cal.Rptr. 375].)

It would seem to follow that in any case where a defendant was found incompetent to stand trial and thus unable to "understand the nature of the proceedings against him," it would be incongruous to hold that his waiver of a jury trial on the issue was valid.

The vice of the holding in *People* v. *Superior Court* (*Campbell*) *supra*, 51 Cal.App.3d 459, and the defendant's position here, is that they are based on a misconception of the cast and purpose of Penal Code sections 1368 and 1369. Both the *Campbell* court and defendant rest their case, for an absolute right to a jury trial, on the potential results of a finding of *incompetency.* Defendant's argument seems even more curious since he was found *competent* and is thus not subject to the risks upon which the *Campbell* court based its decision.

Be that as it may, the thrust of Penal Code sections 1367, 1368 and 1369 is not the involuntary confinement of the defendant but the converse, i.e., to prevent the prosecution and possible confinement of a person who is incompetent to properly defend himself. Thus it is conceived that when the issue arises it will be the defendant who is *seeking* not *avoiding* a finding of *incompetency* and that a finding of *incompetency* is beneficial to defendant.

This conclusion inheres in the fact that the defendant is presumed to be competent and has the burden of showing incompetence by a preponderance of evidence. (Pen. Code, § 1369, subd. (b).) Further, Penal Code section 1369, subdivision (b)(1) provides that *counsel for defendant shall offer evidence in support of the allegations of incompetence.* In short, it seems incongruous that a defendant could be heard to complain of a finding of *incompetency* whether rendered by a judge or jury.

In our opinion, defendant would have had more justification for arguing that a jury trial on the issue of competency to stand trial is a matter of constitutional right because of the possibility that an incompetent person may be forced to stand trial with the attendant risk of being con-

victed and imprisoned for a criminal offense. We will therefore analyze the issue from that perspective.

■ A criminal defendant has, in addition to the right to a jury trial on the question of his guilt or innocence, a right to be personally present at all stages of the proceedings (Cal. Const., art. I, § 15; Pen. Code, § 1043, subd. (a); *People v. Berling* (1953) 115 Cal.App.2d 255 [251 P.2d 1077]) and the right to be represented by competent counsel. (Cal. Const., art. I, § 15; *People v. Douglas* (1964) 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

Inherent in these enumerated rights is the requirement that, though physically present, defendant also be mentally present and understand the nature of the proceedings, and though represented by counsel be able to contribute to the rational conduct of the defense by cooperating and consulting with his counsel. In summary, the trial or conviction of a person who is incompetent in this sense violates due process of law. (*Pate v. Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836], *Drope v. State of Missouri* (1975) 420 U.S. 162 [43 L.Ed.2d 103, 95 S.Ct. 896].)

■ The issue then is whether the constitutional guarantees of due process and trial by jury on the criminal charge itself require that the subsidiary question of defendant's competence to stand trial also be decided by a jury.

The constitutional right to trial by jury applies to ordinary criminal and civil trials where issues of fact are raised by pleadings. It has no application to special proceedings. (*People v. Loomis* (1938) 27 Cal.App. 2d 236 [80 P.2d 1012]; *People v. Hill, supra,* 67 Cal.2d 105; *County of Sacramento v. Superior Court* (1974) 42 Cal.App.3d 135, at p. 140 [116 Cal.Rptr. 602]; see also: 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 13; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 78; 5 Witkin, Summary of Cal. Law, Constitutional Law, § 265(4).) The constitutional right to trial by jury does not extend to special proceedings unless the right is given by statute. (*People v. Willey* (1954) 128 Cal.App.2d 148, at p. 151 [275 P.2d 522].)

The purpose of the jury is to bring to the decisional process the wisdom and conscience of the community and to act as a shield against government oppression and unfounded criminal charges. In determining the issue of competency to stand trial there is no reason to believe that

a jury would have any greater ability to fairly decide the issue than would a judge. The evidence generally consists only of expert testimony and community conscience, as a shield against unfounded criminal charges, is not involved.

Due process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure. (*Dohany* v. *Rogers* (1930) 281 U.S. 362 [74 L.Ed. 904, 50 S.Ct. 299, 68 A.L.R. 434].) In our opinion, the procedure for determining competency pursuant to Penal Code sections 1368 and 1369, which provides a jury trial on demand of defendant and permits a court trial in the absence of such demand comports with due process.

An analogy may be found in Penal Code section 1538.5, which establishes a procedure for determining the competency of evidence seized by police. ■ Due process of law prohibits the use of evidence garnered in violation of the constitutional guarantee against unreasonable search and seizure. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].) California's procedure for determining the subsidiary question of whether evidence is or is not competent does not, however, provide for a jury trial on the issue, and we are not aware of any challenge to the constitutionality of that procedure.

In a similar vein, California's provision for a preliminary hearing before a magistrate in felony prosecutions is designed to insure that there is available sufficient competent evidence against the defendant before he may be forced to stand trial.

This procedure was adopted as a substitute for the requirement of a grand jury which is found in the Fifth Amendment to the United States Constitution. The constitutionality of that procedure has withstood a due process challenge. (*Hurtado* v. *California* (1884) 110 U.S. 516 [28 L.Ed. 232, 4 S.Ct. 111].)

■ We conclude that in proceedings to determine competency under Penal Code sections 1368 and 1369, there is no constitutional right to a jury trial. The trial court's determination that defendant was competent to stand trial was proper, no demand for a jury having been made, and that finding was supported by substantial evidence.

■ Finally, contrary to defendant's contentions, the trial court's refusal to permit defendant to act in pro. per. at the trial on the merits was also proper.

The issue of whether defendant was capable of cooperating with counsel in presenting a rational defense is different from the issue of whether defendant could intelligently waive his right to counsel with a realization of the risks involved. (*People* v. *Teron* (1979) 23 Cal.3d 103 [151 Cal.Rptr. 633, 588 P.2d 773].) The trial court could, however, rely on the evidence presented on the former issue in determining the latter. That evidence constituted substantial support for the decision to deny pro. per. status to defendant. (*Curry* v. *Superior Court* (1977) 75 Cal. App.3d 221 [141 Cal.Rptr. 884].) Defendant's remaining contentions do not merit discussion.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied on April 16, 1981, and the following opinion was then rendered:

**THE COURT.**—Because of contentions made by appellant in his petition for rehearing, we feel compelled to be more expansive in our denial than is usually the case.

■ The petition for rehearing makes the assertion that our failure to discuss certain issues tendered in appellant's opening brief and our statement in the opinion that "they do not merit discussions" violates article VI, section 14 of the California Constitution.

That latter provision states that "Decisions of the Supreme Court and Courts of Appeal that determine causes shall be in writing with reasons stated."

The exact contours of that requirement have not been delineated by case law perhaps for the reason that the necessarily subjective nature of the determination of what constitutes an "adequate statement of reasons" makes the establishment of objective criteria difficult if not impossible.

In our opinion, the requirement is designed to insure that the reviewing court gives careful thought and consideration to the case and that

the statement of reasons indicates that appellant's contentions have been reviewed and consciously, as distinguished from inadvertently, rejected.

We consider our primary role as an intermediate appellate court to review each case for "correctness" of result and we interpret the phrase "determines causes" to refer to disposing of the judgment or the order of the trial court and not to every corollary legal issue that may somehow be involved.

Our view is fortified by the constitutional mandate of article VI, section 13 to the effect that "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

As to the effect of article VI, section 14, it has been observed in 5 California Jurisprudence Third, Appellate Review, section 559, page 271: ". . . a short opinion that is severely limited to a brief discussion of the legal issues and the essential facts with a minimum of legal authority satisfies the constitutional requirement." The example given is an opinion of the Supreme Court itself in *McDonald* v. *Severy* (1936) 6 Cal.2d 629 [59 P.2d 98].

Similarly, in 6 Witkin, California Procedure, Appeal, section 496, at page 4447, it is stated ". . . a short opinion, stating only the essential facts and deciding only the *essential legal issues* . . . fully meets the constitutional requirement . . . ." (Italics added.)

Further, the Supreme Court in *Holmes* v. *Rogers* (1859) 13 Cal. 191, 202, tersely observed that "'An opinion is not a controversial tract, much less a brief in reply to the counsel against whose views we decide. It is merely a statement of conclusions, and of the principal reasons which have led us to them.'"

In the instant case, appellant presented two issues which in our opinion merited extensive discussion, and one of which compelled us to certify our opinion for publication. The remaining issues presented were ones which either were not raised in the trial court or lacked even a modicum of support in the record.

Our statement that these other contentions "did not merit discussion" is an indication that we necessarily and carefully analyzed the contentions in order to reach that conclusion. Having disposed of and determined the "cause," to wit, to affirm the judgment of conviction on the basis of the two issues presented that were of arguable merit, we did not feel compelled by article VI, section 14, to lengthen the opinion by several additional paragraphs in order to say the same thing only in more words.

We are cognizant of the fact that conscientious lawyers, in both civil and criminal cases, often feel obligated to present every imaginable issue. This tendency in criminal cases is due in part to the Supreme Court's dictates in *In re Smith* (1970) 3 Cal.3d 192 [90 Cal.Rptr. 1, 474 P.2d 969]. Oftentimes nonmeritorious contentions are included in briefs as "make weight" to the main issues involved and the same point is often stated in differing ways and given separate headings in the appellant's brief.

Whatever the motivation for employing these techniques, we do not believe that article VI, section 14, requires that we must set forth and dispose of, seriatim, each and every item which appellant's counsel chooses to characterize as an "issue" in the case.

In an era in which there is concern that the quality of justice is being diminished by appellate backlog with its attendant delay, which in turn contributes to a lack of finality of judgment, it behooves us as an appellate court to "get to the heart" of cases presented and dispose of them expeditiously. Unnecessary verbiage and redundant literary exercises are counterproductive.

We regret the length of this order but hopefully it will not have to be repeated.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1981.