Juanita Louise HOMMER, a/k/a Juanita L. Bryant, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–767.

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1983.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, for appellee.

OPINION

BRETT, Presiding Judge:

The appellant, Juanita Louise Hommer, a/k/a Juanita L. Bryant, was convicted of Manslaughter in the First Degree, Case No.

CRF–79–540, in the District Court of Comanche County. She was sentenced to five (5) years' imprisonment.

The victim, with whom appellant was living at the time of the homicide, died of a knife wound to the pericardial sac and the left ventricle of the heart. The appellant was one of three individuals present at the scene of the crime when the police officers arrived.

In her first proposition of error, the appellant argues that Instructions No. Five (5) and Four (4) were erroneous. The appellant alleges that these errors were not waived by the failure of the defense to object to the instructions or offer her own because she was deprived of the fundamental right to clear instructions essential to her defense. *Palmer v. State,* 78 Okl.Cr. 220, 146 P.2d 592 (1944). We will consider her arguments.

According to the appellant, the fatal flaws of Instruction No. 5 are threefold: first, that the instruction required the appellant to measure the amount of force appropriate to her self-defense; second, that the jury was required to determine the sufficiency of the force according to their own objective viewpoint, without regard for what appeared reasonably necessary to the appellant at the time of the crime; and third, that the effect of the instruction was to shift the burden to the defense to prove self-defense beyond a reasonable doubt.

The appellant finds her argument in the case law of this State and attempts to identify a precedential niche where this instruction might fit and relief be granted. Her reliance on *Franks v. State,* 8 Okl.Cr. 71, 126 P. 582 (1912); and *Wingfield v. State,* 89 Okl.Cr. 45, 205 P.2d 320 (1949), are ill-founded because the tenuous distinctions enunciated in those cases are outmoded. In *Franks,* this Court found that the phrase "just such force as was necessary ... and no more" required the defendant to measure the exact force necessary to avert danger during the heat of passion and held that this was an impermissible burden. Subsequently, in *Wingfield,* the jury was instructed to determine whether the defend-

ant had used unreasonable force in self-defense. The crucial distinction, validating the *Wingfield* instruction, was that the *Franks* instruction required an on-the-scene calculation by the defendant, whereas the instruction in *Wingfield* "placed upon the jury the responsibility of measuring under the circumstances the force applied by the defendant and to determine whether or not he used more force than was reasonably necessary ..." *Wingfield,* supra, at 326.

■ It would be absurd to anticipate that a defendant could calculate a mathematically accurate quantity of force essential to do no more than repel an attack, at the moment of the attack. It is equally unrealistic to acknowledge the jury's responsibility to judge the appropriateness of the force used by the defendant under the circumstances and simultaneously pretend that there is no responsibility on the part of the defendant to measure the force necessary at the time of the attack. The jury is required to determine whether "... a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he/she was in imminent danger ... [and further] ... The amount of force used may not exceed the amount of force a reasonable person, in the circumstances and from the viewpoint of the defendant, would have used ..." OUJI–CR744. The measurement of force sufficient to repel an attack must be made by the defendant on the scene; he will be judged subsequently by the jury on the reasonableness of his reaction under the circumstances. *Franks* and *Wingfield,* supra, are overruled as far as their inconsistency with this holding.

■ The pertinent portion of the challenged Instruction No. 5 reads as follows: "... provided the force or violence used in self-defense is not more than sufficient to prevent such offense..." Although this is not a model instruction, the trial court did not have the benefit of either the subsequently published *Oklahoma Uniform Jury Instructions* or an alternative instruction by the defense. The instruction did not place an impermissible burden on the appellant to

measure the force necessary to resist attack. Furthermore, no reference to an objective versus a subjective standard is found in this instruction, and no law is cited which makes the "viewpoint" a required part of a self-defense instruction, even though the better practice would be to instruct on that aspect of the defense, as is done in the Uniform Instructions, supra.

■ Finally, the appellant has failed to persuade this Court that Instruction No. 5 shifted the burden to the defendant to prove self-defense. The cited portion reads as follows: ". . . if you find from the evidence that the acts of the defendant were committed in defense of her person. . ." The burden was properly placed on the State in Instruction No. One (1), and the use of the word "find" in Instruction No. 5, did no more than refer to the jury's "finding" that the defendant had established self-defense by sufficient evidence; it was then the State's burden to prove absence of self-defense beyond a reasonable doubt.

■ Instruction No. Four (4) is fatal in its failure to define "felony" when instructing on justifiable homicide, according to the appellant, who cites *Palmer v. State,* supra. The facts, however, negate the necessity of defining the term, "felony." The defense was trying to prove that the homicide was a justifiable resistance to great personal injury or an attempted homicide. There is no merit to this assignment of error.

■ In her second assignment of error, the appellant alleges that the initial restraint was an illegal arrest and that the subsequent statement was tainted and should not have been admitted into evidence. Further, she claims that the statement was incomplete, therefore aggravating the original illegality. According to the appellant, the arrest occurred at the time she was taken to the police station and that this was a warrantless arrest without probable cause.

The first determination to be made is the time of the arrest. At the scene of the homicide, the appellant was asked by the investigating officers to accompany them to the police station for questioning. Once they arrived at the station, the appellant waited in the records area until Officer Salmon arrived at the station to speak with her. Officer Salmon testified that he told the appellant that she was not under arrest and that she was a suspect. He read her the *Miranda* rights.

The case at hand is comparable to *Scott v. State,* 617 P.2d 240 (Okl.Cr.1980), where Scott was requested by the police to come to the station to appear in a lineup. He came voluntarily, and he was arrested after being identified in the lineup. At that time he made a statement, and in appealing his conviction he alleged that his compliance with the officer's request to come to the station constituted an arrest without probable cause and that all subsequent evidence should have been suppressed.

In *Scott,* this Court found that his appearance at the station was voluntary. In this case, the appellant was asked to come to the station for questioning, and she was not placed in a jail cell but rather remained in the records room prior to questioning. There is no indication that she either went to the station or waited at the station against her will. It was only after she gave the statement indicating her involvement in Neal's death that she was arrested.

After having been read her rights at least twice, the appellant read the rights waiver, acknowledged her understanding of that document, indicated that she was a graduate of high school, and signed the waiver.

■ A statement of the questions asked and the appellant's responses was typed for her signature, which she did sign, and now she alleges that the statement should not have been admitted because of its failure to include the spontaneous statements made by her at the time of the questioning. There is no allegation, much less proof, that any significant item was omitted from the statement. Furthermore, the appellant signed the document as her statement of confession. No error appears of record.

Two rulings by the trial court are the subject of the third argument on appeal. It

is argued that the refusal of the trial court to permit argument against admission of State's Exhibit Number Seven and the refusal to allow argument to support the demurrer to the evidence both indicated the judge's attitude toward the defense's objections, thereby prejudicing the jury.

■ It is the responsibility of the judge to preside over the trial with judicial conduct, maintain the decorum of the courtroom, pass upon questions of law and admissibility of evidence and refrain from making statements which might tend to prejudice the defendant. *Puckett v. State,* 363 P.2d 953 (Okl.Cr.1961).

■ In ruling on the demurrer to the evidence, the trial court must determine whether there is competent evidence which reasonably tends to sustain the allegations of the charge, and if there is, the demurrer should not be sustained. See *Roberts v. State,* 571 P.2d 129 (Okl.Cr.1977), cert. den. 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316. It is presumed that the trial court will apply the correct rule of law, and in the case of a demurrer to the evidence no purpose would be served by permitting the defense to argue its demurrer. Furthermore, in the trial now on review, the ruling was done outside the presence of the jury; therefore, no inference could be drawn by his decision.

■ As for State's Exhibit Number Seven, the yellow-handled knife, the defense attorney did not object at the time that it was offered into evidence; instead he asked to cross-examine the witness regarding the knife. The judge ruled that the exhibit be admitted and delayed the cross-examination. On the following day, the defense attorney objected to the admission of the knife, and this objection was overruled.

This Court finds that the defense did not properly preserve its objection to the exhibit, and no fundamental right is at issue. There is no merit to the argument.

In her final assignment of error, the appellant challenges the admission of a color photograph, State's Exhibit Number Six, claiming that the photograph's probative value was outweighed by its prejudicial effect. The appellant notes that this photo, taken while the decedent was at the morgue, was the only color photo and that it was admitted even though black and white photos were available.

■ The well-established rule governing the admission of photographs was set forth in *Oxendine v. State,* 335 P.2d 940 (Okl.Cr. 1958). This Court held that photographs which are probative of a material issue, which probative value outweighs the potential for prejudice, are admissible even if they are somewhat gruesome.

■ The color photograph in dispute is not unnecessarily gruesome, and it is unlikely that the jury was unduly aroused by their exposure to it. Furthermore, it was probative of the location of the wound.

Therefore, the judgment and sentence is affirmed.

CORNISH, J., concurs.

BUSSEY, J., concurs in results.