STATE of Utah, Plaintiff and Appellee,

v.

Douglas CARTER, Defendant and Appellant.

No. 860063.

Supreme Court of Utah.

May 12, 1989.

As Amended May 12, 1989.

Gary Weight, James P. Rupper, Thomas H. Means, Provo, for defendant and appellant.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Lionel H. Frankel, Salt Lake City, for ACLU.

HALL, Chief Justice:

On February 27, 1985, Eva Oleson was found dead in her home. Following an investigation, defendant was arrested in Nashville, Tennessee, and charged with the murder. After confessing to officers that he committed the crime, defendant was extradited to Provo, Utah, where he was tried and convicted of first degree murder and sentenced to death.

Defendant's original appellate counsel filed two briefs on appeal. After defendant filed a pro se motion with this Court, replacement counsel was appointed to brief additional issues defendant raised. · Also, the American Civil Liberties Union was permitted to file an amicus brief in this case.

In reaching the issues on appeal, we reiterate that

[t]his Court will *review* errors raised and briefed on appeal in death penalty cases, even though no proper . objection was made at trial, but will reverse a conviction based upon such errors only if they meet the manifest and prejudicial error standard. In addition, this Court has the power to *notice* manifest ("palpable") error apparent in the record *and correct* a conviction based upon the same if the error is prejudicial, even though such error is not objected to at trial or assigned on appeal.[1]

In addition to correctly reflecting this Court's responsibility and approach in reviewing death penalty cases, this rule also impliedly recognizes another established principle generally applicable to all civil and criminal cases, namely, that this Court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.[2]

This was essentially the view of the North Carolina Supreme Court in stating:

It is our duty to *decide* all cases brought before us, but whether a written opinion shall be filed is entirely within our discretion. A failure to do so is in no sense a reflection upon counsel, nor is it any

---

1. *State v. Tillman,* 750 P.2d 546, 553 (Utah 1987) (emphasis added; footnotes omitted).

2. *See* 5 Am.Jur.2d *Appeal & Error,* § 901, at 338 and cases cited therein.

criterion as to the ability or learning with which the case may have been argued. It simply means that we do not think it necessary.... If the essential principles upon which a case depends have been already settled, we can add but little, if anything, to what has already been said; while the discussion of questions not essential to its determination, even if argued by counsel, may well be omitted in the interest of time and space.[3]

Similarly, in holding that California's constitution did not require its appellate courts to "set forth and dispose of, seriatim, each and every item which appellant's counsel chooses to characterize as an 'issue' in the case," the California Court of Appeals eloquently stated:

Our statement that these other contentions 'did not merit discussion' is an indication that we necessarily and carefully analyzed the contentions in order to reach that conclusion....

....

In an era in which there is concern that the quality of justice is being diminished by appellate backlog with its attendant delay, which in turn contributes to a lack of finality of judgment, it behooves us as an appellate court to "get to the heart" of cases presented and dispose of them expeditiously. Unnecessary verbiage and redundant literary exercises are counter-productive.[4]

In applying this principle to cases before us, we have, after fully considering the substance of particular claims raised on appeal, summarily (and often without written analysis) dismissed the same as meritless or of no effect.[5] Use of this rule in capital punishment and other cases continues to be appropriate and important in acknowledging established principles while enabling this Court, after fair and comprehensive review, to expeditiously focus judicial resources and energy on those critical or outcome-determinative issues which may be raised in any given case and/or which have not in substance been previously urged upon this Court and rejected.[6] Accordingly, after fully reviewing every claim raised in the instant case, we discuss at length only those issues critical to this appeal.[7]

Defendant claims that the trial court erred by not suppressing his confession. Several months after the murder occurred, Tennessee police officers received information from an anonymous source that defendant was at a female friend's Nashville residence. After confirming that defendant was wanted in connection with the case, officers proceeded to the friend's residence and there arrested defendant.

At the hearing on defendant's motion to suppress, a Nashville police officer testified that he gave defendant a *Miranda* warning

---

3. *Parker v. Atlantic Coast Line R.R.*, 133 N.C. 335, 337, 45 S.E. 658, 658 (1903) (emphasis in original); *cf. Phelps Dodge Corp. v. Industrial Comm'n*, 90 Ariz. 379, 381, 368 P.2d 450, 452 (1962) (en banc) ("[T]he decision need not contain a seriatim rebuttal of points made or arguments advanced. Enlargements upon the ground of decision ought to be limited to matters where areas of genuine dispute exist.").

4. *People v. Rojas*, 118 Cal.App.3d 278, 290, 174 Cal.Rptr. 91, 92–93 (1981); *cf. Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886) ("'[T]o dispose of the party as law and justice require' does not deprive the court of discretion as to the time and *mode* in which it will exert the powers conferred upon it." (Emphasis added.)) (federal court's power in habeas corpus cases to deal with federal constitutional right violation of defendant held in state custody).

5. *See, e.g., State v. Bishop*, 753 P.2d 439, 460, 489 (Utah 1988) (defendant's claims reviewed and

dismissed without lengthy analysis); *State v. Lafferty*, 749 P.2d 1239, 1261 (Utah 1988) ("We have considered every one of [defendant's] other claims and find each of them to be without merit.").

6. *See Bishop*, 753 P.2d at 460; *cf.* Utah R.Crim.P. 26(10) (death sentence cases shall be placed on the Supreme Court's calendar for expeditious determination).

7. Although in raising his claims defendant relies on both the United States and Utah Constitutions, he does not specifically contend that the state and federal analyses differ. Therefore, pursuant to our prescribed standard of review in death penalty cases, we treat defendant's claims as based only upon federal constitutional provisions. *See Lafferty*, 749 P.2d at 1247 n. 5 (citing *State v. Ashe*, 745 P.2d 1255, 1257 n. 2 (Utah 1987)).

after arresting him. At the police station later that day, he again advised defendant of his *Miranda* rights and obtained a written waiver of those rights from him. The officer then questioned defendant for several hours over the next two days; during those times, defendant was allowed to smoke, drink water, and use restroom facilities.

The officer testified that he did not threaten defendant. He also denied that he used the friend's situation or that of her children in any manner to intimidate defendant into confessing, stating that he offered information about her status only in response to defendant's frequent questions regarding her.

A police officer from the Provo police department was sent to Tennessee to extradite defendant. At the suppression hearing, the Provo officer testified that when he interviewed defendant in Tennessee, he advised defendant of his *Miranda* rights and soon obtained a confession from him. Thereafter, the officer apparently dictated the confession, stopping after every few lines to ask defendant whether what was dictated was accurate. The confession was then reduced to writing and signed. Although acknowledging at the suppression hearing that he had interviewed defendant's friend prior to questioning defendant, the officer denied making any threats or promises to defendant concerning her.

In contrast, defendant testified that he never received *Miranda* warnings from the Nashville or the Provo officer and that he could not recall signing written waivers of his constitutional rights. Defendant did acknowledge, however, that his signature appeared to be on documents waiving those rights. On appeal, he reiterates his claim that the officers repeatedly threatened that his friend would be charged with a felony, go to prison, and be separated from her children unless he confessed.

■ In *State v. Bishop*,[8] we recently noted that the State bears the burden of proving by at least a preponderance of the evidence that a defendant's confession is voluntary.[9] Voluntariness is determined by the totality of the circumstances of the accused and his or her interrogation.[10] Applying this standard, we have examined the record and reviewed the totality of the circumstances and now conclude that defendant's statements were voluntarily made.[11] The trial court was presented with significantly different accounts of the circumstances of defendant's confession. However, defendant has not shown that the court abused its discretion in assessing the evidence presented and drawing a reasonable conclusion therefrom.[12]

Defendant further claims that the court erred in admitting his confession, given the manner in which it was dictated. He also contends that the prosecutor's statements which attributed to defendant the specific words of the confession that the Provo officer dictated undermined his constitutional right not to testify and denied the court a true version of his statement, all of which substantially prejudiced his trial.

■ After reviewing the record, we are convinced that there is no proof to support a determination that any significant item was omitted from the statement, that defendant's rights were violated, or that he was prejudiced by the prosecutor's comments. In fact, defendant's own detailed statements to two other witnesses immediately after the crime parallel and substantially support the confession given to the police. Further, defendant signed the document, and he was not denied a full and fair opportunity to cross-examine the officers concerning the accuracy of the writing as a reflection of his oral confession.[13]

8. 753 P.2d 439.

9. *Id.* at 463–64.

10. *Id.*

11. *Id.* at 464 & n. 76.

12. *Id.* at 463–64; *State v. Kelly,* 718 P.2d 385, 392 (Utah 1986).

13. *United States v. Johnson,* 529 F.2d 581, 584–85 (8th Cir.), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835 (1976) ("A statement which is reduced to writing by one other than the accused is generally admissible where the ac-

While we hold that admission of the confession was not prejudicial error, we do not sanction the particular manner in which it was recorded in this case. In *Bishop*, that defendant's confession, together with statements made by the police officers, was recorded verbatim. This process not only helped insure that the defendant's confession was not coerced, but also provided both the trial court and this court with the correct tools for effectively and efficiently reviewing the defendant's contentions, as well as the totality of the circumstances of his confession.[14] Such a process guarantees that constitutional rights are protected and justice is effected. Nevertheless, while the dictation process that occurred in this case could conceivably amount, in other instances, to deprivation of a defendant's constitutional rights, that was not the case here.

Next, we turn to defendant's claim that the prosecutor indirectly commented on defendant's failure to testify at trial and suggested to the jury that his silence implied guilt. Defendant refers to the following comment which the prosecutor made in his summation to the jury during the guilt phase of trial:

I heard no evidence, evidence, [sic] from the witness stand about coercion or about inducing somebody to say anything about something that didn't happen. I heard no evidence that supports any other theory in this case than the theory that was presented by the State of Utah, that he's guilty of first degree murder.

■ As noted in *State v. Tillman*,[15] a prosecutor's direct reference to a defendant's decision not to testify is always a violation of that defendant's fifth amendment right against self-incrimination. Indirect reference to a defendant's failure to testify is also constitutionally impermissible if the comment was manifestly intended to be or was of such a character that the jury would naturally and necessarily construe it to be a comment on the defendant's failure to testify.[16]

■ While clearly not a direct reference, we do not believe after reviewing the record that the statement in question would naturally and necessarily be construed by the jury as a comment on defendant's silence. Indeed, the comment was made in the context of focusing the jury's attention on defendant's confession, which, under the circumstances of this case, we have concluded was properly admitted. Also, the passage quoted could refer to the lack of any evidence elicited from witnesses or from officers present during defendant's confession contradicting the State's theory of the case. Lastly, the statement was isolated, and the trial judge specifically instructed the jury that "[t]he fact that [defendant] has not taken the witness stand must not be taken as an indication of his guilt, nor should you indulge in any presumption or inference adverse to [him] by reason thereof." Accordingly, defendant's claim is without merit.[17]

■ Defendant elsewhere contends that he was prejudiced by the court's decision to allow the Provo police officer to remain at the prosecution table throughout the proceedings and to then testify for the State although the exclusionary rule was in effect.

Rule 615 of the Utah Rules of Evidence states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or em-

---

cused reads it over and signs it."); *Hommer v. State*, 657 P.2d 172, 175 (Okla.Crim.App.1983) (defendant did not allege or prove that any significant item was omitted from statement, and defendant signed the document as her statement of confession); *see also State v. Morris*, 83 Or. 429, 441–42, 163 P. 567, 571 (1917) (by signing and adopting language of prepared confession, defendant makes it his own).

14. *See generally Bishop*, 753 P.2d at 460–67.

15. 750 P.2d 546.

16. *Id.* at 554.

17. *See Tillman*, 750 P.2d at 555.

ployee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

On appeal, defendant neither specifically contends that the officer's presence at counsel table during trial offended the purpose of the exclusionary rule nor explicitly claims that the officer's presence did not properly meet the "party representative" exception to the exclusionary principles enumerated in rule 615(2) of the Utah Rules of Evidence.[18] Instead, he surmises that he was prejudiced by the fact that the officer's presence possibly indicated to the jury that the government placed its integrity and prestige behind that witness, thus vouching for his credibility. We disagree.

Our above-noted rule is identical to rule 615 of the Federal Rules of Evidence, which has been interpreted by many federal courts. In *United States v. Williams*,[19] the Eighth Circuit Court of Appeals held:

Rule 615 of the Federal Rules of Evidence does not authorize the exclusion of a government officer or employee who has been designated as its representa-

tive. Further, it is a matter within the discretion of the trial court whether to permit the government's representative to testify, even though the witness sat at the counsel's table throughout the trial. In the absence of any specific showing of prejudice to [the defendant] from the action of the trial court, we find no abuse of discretion.[20]

Also, in regard to prosecutorial vouching for witnesses, it has been stated:

"Attempts to bolster a witness by vouching for his credibility are normally improper and error." The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. This test may be satisfied in two ways. First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' credibility. Secondly, a prosecutor may implicitly vouch for the witness veracity by indicating that information not presented to the jury supports the testimony.[21]

---

**18.** Immediately after the jury was selected, defendant moved to invoke the exclusionary rule. Informed that the officer would testify as a witness for the prosecution, the trial court acknowledged and defendant acquiesced in the fact that the officer was the designated representative of the State in this case, and the court allowed him to sit at counsel table. The court stated:

I understand, Officer Pierpont you want to keep with you at the table, do you, [Prosecutor] Watson?

Mr. Watson: Yes, please, your Honor.

The Court: All right, all of you [witnesses] other than Officer Pierpont, who are present in the court, if you will please step outside the court.

Thereafter, the court explained the purpose of the exclusionary rule and admonished the witnesses concerning its scope. Regarding the officer, the court noted, "The State is entitled to keep one principal witness at the counsel table." While this latter statement did not accurately describe the officer's designation as the State's representative under rule 615, the court did not err in permitting him to remain in the courtroom and testify in this case. *See infra* notes 20–21 and accompanying text. Inasmuch as the scope and applicability of rule 615(2) and (3) are not before us for review, we do not address additional issues related thereto.

**19.** 604 F.2d 1102 (8th Cir.1979).

**20.** *Id.* at 1115 (citations omitted); *see also United States v. Parodi*, 703 F.2d 768, 773–74 (4th Cir.1983) (a government investigative agent involved in a criminal prosecution falls within the rule 615 exception); *United States v. Jones*, 687 F.2d 1265, 1267–68 (8th Cir.1982) ("[T]here is nothing in the cases or legislative history of the rule that suggests state or local officers should be treated differently than federal officers."); *People v. Cheeks*, 682 P.2d 484, 485–86 (Colo. 1984) (the rule which governs sequestration prohibits exclusion of an officer or an employee of a nonnatural party who has been designated as its representative); *cf. Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976) ("The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony.").

**21.** *United States v. Sims*, 719 F.2d 375, 377–78 (11th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984) (citations omitted) (quoting *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir.1977)), *quoted in United States v. Dennis*, 786 F.2d 1029, 1046 (11th Cir.1986); *accord United States v. Roberts*, 618 F.2d 530,

In view of the above principles, defendant has not demonstrated how he was actually prejudiced by the fact that the officer sat at counsel table and testified for the State or how defendant's particular situation justifies a change from the established rule in such cases. Also, defendant has not alleged and we find no support for a conclusion that the prosecution cloaked the officer with the State's integrity and prestige by either making "explicit personal assurances" of his veracity or indicating that information not presented to the jury supported his testimony.[22] Accordingly, we conclude that defendant was not prejudiced and the trial court did not err in allowing the officer to sit at counsel table and testify at trial in this case.[23]

■ We next address defendant's claim that he was denied effective assistance of counsel in violation of both his state and federal constitutional rights. In *Strickland v. Washington*,[24] the United States Supreme Court established the standard for determining the existence of ineffective assistance of counsel at trial. In order to prevail on such a claim, a defendant must show, first, that his or her counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment, and, second, that counsel's performance prejudiced the defendant.[25] This Court has applied that standard in several cases.[26] In several of those cases, we followed one course advised but not required[27] by the Court in *Strickland:*

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[28]

■ After reviewing defendant's asserted claims of error in this regard, we conclude that most of his allegations of prejudice are wholly speculative[29] and in no way give rise to the conclusion that "but for

533–34 (9th Cir.1980), *quoted in State v. Salcido,* 140 Ariz. 342, 344, 681 P.2d 925, 927 (Ct.App. 1984); *cf. Schlatter v. McCarthy,* 113 Utah 543, 557, 196 P.2d 968, 975 (1948) (civil case stating general rule that a party who calls a witness thereby vouches for his or her veracity).

22. *Sims,* 719 F.2d at 377–78.

23. *See State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986) (clearly erroneous standard of review applies in considering trial court's ruling on admissibility of testimonial and other evidence).

24. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

25. *Id.* at 687–88, 104 S.Ct. at 2064–65.

26. *See, e.g., State v. Speer,* 750 P.2d 186, 191–92 (Utah 1988); *State v. Archuleta,* 747 P.2d 1019, 1023–24 (Utah 1987); *State v. Frame,* 723 P.2d 401, 405 (Utah 1986) (per curiam); *State v. Geary,* 707 P.2d 645, 646 (Utah 1985) (per curiam).

27. *Strickland* does not require that a defendant claiming ineffective assistance must show that the conduct prejudiced his case before the reviewing court will consider whether specific conduct falls below the required standard of objective reasonableness. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. While this Court may choose at times to deal with ineffective assistance claims by first reviewing the likely-prejudice-of-the-outcome issue, that decision does not prevent this Court in other instances from first considering the issue of whether specific conduct falls below the required standard of objective reasonableness. Any implications to the contrary are in error. *See, e.g., Archuleta,* 747 P.2d at 1023; *Frame,* 723 P.2d at 405.

28. 466 U.S. at 697, 104 S.Ct. at 2069.

29. In *Frame,* 723 P.2d at 406, the Court noted:

> Defendant claims that he was inadequately prepared as a witness and that no other witnesses were called on his behalf. These contentions are also inadequately supported on appeal. Defendant does not explain how his testimony or the purported lack of advance preparation was prejudicial to him. He does not explain what his testimony would have been had he been adequately prepared. Also, defendant does not identify what other persons should have been called as witnesses or how their testimony was essential to his defense.

> (Citations omitted.)

counsel's unprofessional errors, the result of the proceeding would have been different."[30] Additionally, defendant has not sufficiently shown how the decisions made by trial counsel were not merely tactical choices or how counsel's performance fell below an objective standard of reasonable professional judgment.[31] Other claims are clearly not supported by the record. For example, there is no support for the contention that counsel failed to elicit evidence relevant to whether defendant was afforded his sixth amendment right to counsel at the time his confession was taken. Instead, defendant twice acknowledged and voluntarily waived his right to counsel. Documents to this effect stated in part:

> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### Waiver of Rights

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Defendant signed these statements, indicating that he had been afforded his sixth amendment right to counsel at the time his confession was taken, and he noted at the preliminary hearing that the signatures appeared to be his own. Accordingly, defendant's claims of ineffective assistance of counsel are, for the most part, without merit.

Notwithstanding the above, we conclude that manifest error was committed during the penalty phase. In *State v. Wood*,[32] we held that "[i]n a capital penalty proceeding, it is essential that the sentencing authority consider and weigh only proper mitigating and aggravating factors."[33] In that case, the trial court during the penalty phase relied upon the ruthlessness and brutality of the murder as an aggravating factor in the weighing process. The sentencing judge had considered the factor under the general provision in Utah Code Ann. § 76-3-207 (Supp.1988) authorizing the trier of fact to consider "any other facts in aggravation or mitigation of the penalty." Despite that statutory language, we ruled that consideration of such an indefinite and uncertain standard as "ruthlessness and brutality" was impermissible.[34] In doing so, we cited *Godfrey v. Georgia*[35] as support. Therein, the United States Supreme Court set aside a death sentence based on an aggravating factor that the murder was "outrageously or wantonly vile, horrible, and inhuman." *Godfrey* held that the aggravating factor had to be narrowed to meet constitutional standards because it described all murders and allowed the jury unlimited discretion in imposing the death penalty.[36]

---

**30.** *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Codianna v. Morris,* 660 P.2d 1101, 1109 (Utah 1983) ("[P]rejudice means that without counsel's error there was a 'reasonable likelihood that there would have been a different result.'" (Quoting *State v. Gray,* 601 P.2d 918, 920 (Utah 1979)).

**31.** *Supra* note 25; *State v. Wood,* 648 P.2d 71, 91 (Utah 1982) ("Trial tactics lie within the prerogative of counsel and may not be dictated by his [or her] client. Decisions as to what witnesses to call, what objections to make, and, by and large, what defenses to interpose are generally left to the professional judgment of counsel."),

*cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

**32.** 648 P.2d 71.

**33.** *Id.* at 85.

**34.** *Id.* at 86.

**35.** 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

**36.** 446 U.S. at 428–29, 433, 100 S.Ct. at 1764–65, 1767; *Wood,* 648 P.2d at 86.

After we issued our opinion in *Wood*, the legislature enacted Utah Code Ann. § 76–5–202(1)(q) (Supp.1988) ("subsection (1)(q)"), apparently to avoid such constitutional infirmity. That subsection classifies criminal homicide as first degree murder when the homicide is "committed in an especially heinous, atrocious, cruel, or exceptionally depraved manner, any of *which must be demonstrated by physical torture, serious physical abuse, or serious bodily injury of the victim before death.*" (Emphasis added.)

■ At trial in the instant case, the jury was instructed that it could convict defendant of first degree murder if it found that the intentional or knowing homicide was "committed in an especially heinous, atrocious, cruel, or exceptionally depraved manner." It was never properly instructed in either the guilt or the penalty phase that Utah law expressly requires that such factor "must be demonstrated by physical torture, serious physical abuse, or serious bodily injury of the victim before death." The jury then determined that the murder was committed "in an especially heinous, atrocious, cruel or exceptionally depraved manner." During the penalty phase, the jury was instructed that it could consider the aggravating factors it had already found in the guilt phase in determining the appropriate penalty. Defendant now claims that the failure to properly instruct the jury during the guilt phase permitted it to improperly find the existence of the subsection (1)(q) aggravating circumstance and to then consider that erroneous finding when determining the penalty. This, defendant claims, was manifest error.

■ In response, the State concedes that failure to properly instruct the jury invalidated its reliance on subsection (1)(q) as a basis for finding defendant guilty of capital murder. However, as the State properly notes, this instructional error does not require reversal of defendant's first degree murder conviction since the jury, in addition to finding the existence of the subsection (1)(q) circumstance, specifically found that the murder was also committed in connection with an aggravated burglary under subsection 76–5–202(1)(d). This determination alone was sufficient to support defendant's conviction.[37]

■ The issue is different, however, when the death sentence imposed by the jury in the penalty hearing is considered. Defendant claims that there is a reasonable probability that absent the erroneous finding of the subsection (1)(q) circumstance, the jury would not have imposed the death penalty. The defense contends that this uncertainty must invalidate defendant's death sentence. We agree under the circumstances of this case.

During the penalty phase, the jury was instructed in part that it could

consider as aggravating circumstances the very matters which were aggravating circumstances in the guilt phase, specifically that the defendant committed the murder of Eva Oleson during the commission of or an attempt to commit aggravated burglary and that the murder was committed in an especially heinous, atrocious and cruel manner.

This language, reinforced by comments of the prosecutor during the penalty phase, can be viewed as explicitly instructing the jury to consider the subsection (1)(q) circumstance previously found to exist during the guilt phase on the basis of the erroneous instruction. In view of this fact, the sentencing jury, due to the infirmity of the instructions on subsection (1)(q), was likely unable to exercise its judgment about "the suitable disposition of ... defendant under the circumstances particular to him and his crime, after the facts establishing his guilt have been proved beyond a reasonable doubt."[38] In effect, then, the improper instructions denied this jury the opportunity to properly determine whether the mitigating factors were "sufficiently strong when compared with the aggravating

---

37. *See Bishop,* 753 P.2d at 478–79; *State v. Johnson,* 740 P.2d 1264, 1268 (Utah 1987); *State v. Shaffer,* 725 P.2d 1301, 1307 (Utah 1986).

38. *Andrews v. Morris,* 677 P.2d 81, 84 (Utah 1983).

factors to create a substantial and reasonable doubt that the death penalty is appropriate."[39]

Importantly, a fundamental objective of this Court in such cases is to protect against "the imposition of a death penalty where there existed a reasonable doubt about the persuasive value of and weight to be given to the mitigating factors found by the trial court as opposed to the aggravating factors."[40] Given the erroneous instruction, it is impossible for us to determine or presume that the jury properly performed its weighing function. Because we cannot conclude that defendant was not prejudiced by the subsection (1)(q) instructional error and its effective incorporation into the penalty phase, we remand for new sentencing proceedings.[41]

We have reviewed defendant's other claims raised on appeal and find them to be without merit.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**39.** *Id.* at 83 (quoting *Wood,* 648 P.2d at 78); *cf. Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (statutory aggravating circumstance was unconstitutional as applied in case).

**40.** *Andrews,* 677 P.2d at 84.

**41.** Utah Code Ann. § 76–3–207(4) (Supp.1988).